# OCTOBER TERM, 1875.

---

## Frances M. Sanford v. Samuel Huxford and another.

*Contracts to abstain from litigation: Consideration.* The rule as to consideration for agreements to abstain from litigation, present or contemplated, does not differ from that relating to any other contracts; there must be a benefit on one side, or a detriment suffered, or service done on the other. The benefit rendered need not be to the party contracting, but may be to any one else at his procurement or request.

*Bankruptcy proceedings: Withdrawing opposition: Consenting to adjudication: Consideration.* Withdrawing opposition to bankruptcy proceedings, and consenting to amendments and an adjudication of bankruptcy, involves the surrender of valuable rights, and is therefore sufficient as a consideration to support a valid agreement.

*Bankruptcy proceedings: Procuring withdrawal of opposition: Consideration.* The procurement by creditors of the withdrawal by their debtor of opposition to bankruptcy proceedings pending against him, and of a confession of judgment, would expedite their proceedings and prevent delay and possible failure, and so secure them important advantages, which would be a sufficient consideration to uphold a lawful contract.

*Settlements: Pending litigation: Compromises: Merits of the controversy.* There is a distinction between settlements of pending litigation and compromises of claims upon which no suit has been commenced; and the former are generally sustained without reference to the merits of the controversy, unless the circumstances are very peculiar, and this on the ground that an alteration in the position of the parties may of itself be an advantage, and therefore a sufficient consideration.

*Settlements: Fraud: Presumptions: Demurrer.* If, however, there has been fraud or unfairness in bringing about a settlement, the want of any honest cause of action, or probable defense, may be a fact to be considered with others; but the contract declared upon cannot be presumed on demurrer to have been fraudulent.

*Declaration: Demurrer: Presumptions.* On demurrer to a declaration counting upon a contract based upon the plaintiff's undertaking to procure the consent of his partners to a compromise of a pending litigation, which avers the procurement of their consent, it must be presumed such consent was fairly obtained.

*Bankruptcy: Agreement to withdraw opposition: Fraud: Bankrupt act.* An agreement to withdraw opposition to bankruptcy proceedings, and to consent and submit to an adjudication of bankruptcy, cannot be said to be in fraud of the bankrupt act; no act can be in fraud of a law which it is intended and calculated to carry out.

*Heard June 11. Decided October 5.*

Error to Calhoun Circuit.

32 MICH.—40.

*A. M. Culver, Alvan Peck* and *Theodore Romeyn,* for plaintiff in error.

*Rienzi Loud* and *C. I. Walker,* for defendants in error.

CAMPBELL, J :

Suit was brought below on an agreement by defendants to furnish to Jesse Crowell the value of a certain house formerly owned by him, or means to buy it, and also money enough to support him. The alleged consideration was his withdrawal of opposition to certain bankruptcy proceedings pending against his firm, and consent to amendments and an adjudication against them. A separate count contained the averment of an additional agreement to procure the withdrawal of opposition by the other partners.

The facts averred are set forth substantially as follows: On the 3d day of February, 1871, Crowell owned the dwelling-house property in question, at Albion, which is valuable. On the 15th of October, and until February 17, 1871, he was a member of a commercial firm at Albion, under the style of J. Crowell & Co., composed of himself, William V. Morrison and Osman Rice. The firm was indebted to various creditors, among whom were the defendants, and the First National Bank of Marshall, and the National Exchange Bank of Albion, of which latter Irwin was president. On the 4th of November, 1870, these two banks (the latter by Irwin as its president) filed a petition in bankruptcy against the firm, with the necessary jurisdictional allegations, averring an act of bankruptcy by the suspension of payment of their paper, and also setting up individual acts of bankruptcy against Rice. On the 23d of November the respondents in bankruptcy joined issue, denying the acts of bankruptcy, and demanding a trial by jury, which had not come to trial on the 14th of February, 1871, when Crowell withdrew and procured the others to withdraw opposition, and consented and procured their consent to the steps contemplated by the contract. On the 3d day of February,

SANFORD *v.* HUXFORD.

1871, the contract is alleged to have been made as before mentioned. On the 9th of March defendants proved their debts and became parties to the proceedings.

The defendants demurred to the special counts, the grounds of demurrer being, *first*, that the declaration sets out no consideration for the promises of the defendants; *second*, that the contract was void as against public policy; and, *third*, that it was a fraud on the partners of Crowell. The demurrer was sustained, and error is brought on the rulings.

The objection for want of consideration rests on several distinct grounds, which were, in substance, that there was nothing showing a doubtful case, or a defense, or belief in a defense, in good faith, to the bankruptcy, and nothing to show that the proposed amendments were material, or that defendants could have been benefited, or Crowell injured, by his consent to the adjudication. It is insisted that all these, or enough of them to make out a consideration, should affirmatively appear.

If the arrangement was not illegal, it is not disputed that it may be upheld if any valid consideration appears. But it is claimed there is no presumption of that kind arising out of the facts set out. The rule as to consideration for agreements to abstain from litigation, present or contemplated, does not seem to differ from that relating to any other contracts, although upon the facts difficulties often arise. The rule seems to be well determined, that there must be a benefit on one side, or a detriment suffered or service done on the other. We find nothing to indicate that the benefit rendered need be to the party contracting, if it is to any one else at his procurement or request, any more than in other contracts. And in the present case, if the arrangement made was to the detriment of Crowell, or for the advantage of the petitioning creditors, it is not important what share defendants may have had in the advantage.—*Pullin v. Stokes,* 2 H. Bl., *312; Smith v. Algar,* 1 B. & Ad., *603; Anonymous, Cowp., 129; Rood v.*

*Jones, 1 Doug., 188.* It is admitted that if Crowell lost any advantage which he had a right to insist upon, or if the creditors obtained an advantage otherwise not obtainable, and which Crowell had a right to withhold, or if ther was an honest doubt concerning their respective rights, there would be a sufficient consideration. But it is not admitted that the declaration shows this.

By withdrawing opposition to the bankruptcy proceedings, and consenting to amendments and to a decree, Crowell divested himself of the possessory control and of the legal ownership of his whole estate, and subjected it without further delay to the disposition of the bankrupt court, and to ratable distribution by an assignee among his creditors. He had a right to the control of it until otherwise ordered by the bankrupt court, and he could not lose title to it unless adjudged a bankrupt. If not so declared, he would have retained the dominion recognized by the common law and state statutes, and could apply it as he saw fit, so long as he committed no fraud. He thereby gave up a positive value in present enjoyment, and a contingent right of absolute control and dominion, in case he succeeded on the issue.

That these were valuable rights cannot be doubted. The courts regard involuntary bankruptcy as an injury to which a party should not be subjected except for his legal omissions or violations of duty. The supreme court of the United States has recognized this principle very plainly, in refusing to raise presumptions of fraud to bring transactions within the statutes.—See *Mays v. Fritton, 20 Wal., 414,* following *Wilson v. City Bank, 17 Wal., 473,* in which the subject is fully discussed. *Mr. Justice Miller* says, concerning involuntary bankruptcy *(p. 482),* "But when a person claims to take from another all control of his property, to arrest him in the exercise of his occupation, and to impair his standing as a business man, in short to place him in a position which may ruin him in the midst of a prosperous career, the precise circumstances or facts on which he is authorized to do this, should not only be well defined in the

law, but clearly established in the court." And *Lord Kenyon*, in *Kaye v. Bolton, 6 T. R., 134,* sustaining an agreement to withdraw bankruptcy proceedings, on the promise of a third person to pay creditors, as entirely reasonable, says: "It would be monstrous to say that the bankrupt's estate shall still be torn to pieces by the expenses of the commission." Common experience shows that an estate can seldom be applied in bankruptcy as prudently or economically as in private hands by debtors, and that often (as remarked by *Miller, J.,* in *17 Wal., 486*), "by forbearance of creditors, by meeting only such debts as are pressed, and even by the submission of some of their property to be seized on execution, they are finally able to pay all, and to save their commercial character and much of their property."

The law gave Crowell an absolute right to contest these proceedings before a jury, of which he could not be deprived, except by consent. This right he surrendered by the agreement in question, if made as alleged.

On the other hand, if we assume the allegations to be true, it appears, and must be taken as true, that the creditors of the firm thought it for their advantage to procure a decree in bankruptcy, and were willing to pay a large price for that privilege. They, and not Crowell, appear as the parties anxious for a withdrawal of the legal controversy to be submitted to the jury, and for a confession of judgment (or what is analogous to that), which would expedite their proceedings, and prevent absolute delay, and possible failure. It is plain that this was in fact, and was considered, an advantage.

We have, then, a double consideration, whereby Crowell gave up important rights, and the creditors gained important advantages.

It is urged, however, that unless Crowell had a defense, or at least a case of doubt in his favor, there was no justice in defending, and therefore no consideration for abstaining which the law can favor. And reference is made to compromises where no suit has been commenced, as stand-

SANFORD *v.* HUXFORD.

ing on the same footing with cases in litigation. There are some cases which appear to confound the distinctions, and which may deserve consideration, although upon the present declaration without amendment it is doubtful whether it is very important. But the questions are before us, and cannot be regarded as foreign to the case.

It has been held that a party who gets an agreement in his favor, by a relinquishment or an agreement to relinquish a right, must have some right or some show of right to relinquish. This was held in *Edwards v. Baugh, 11 M. & W., 641,* in regard to a declaration on an agreement to abstain from prosecuting, which did not aver any debt, actual or supposed. This case, however, contains an express assertion that if suit had been commenced before the compromise, no such showing would be needed, and the saving of litigation and its attendant expenses would be a sufficient consideration in itself. In *Cook v. Wright, 1 B. & S., 559,* the court intimate that the declaration in *Edwards v. Baugh* was sufficient, and that the decision was questionable. In *Kaye v. Dutton, 7 M. & G., 807,* the consideration was confined to the transfer of an interest, and held bad because there was none. In *Jones v. Ashburnham, 4 East, 455,* it was held an agreement to forbear suit was nugatory unless it was in favor of some person named or otherwise designated, and in that instance there was no person liable to suit indicated or existing. In *Barber v. Fox, 2 Wm. Saunders, 136,* an heir's promise, based on a bond in which there were no words binding heirs, was held invalid, as, in *Tooley v. Windham, Cro. Eliz., 206,* was a promise to compensate a personal tort of an ancestor, on which there was no surviving cause of action. In *Seaman v. Seaman, 12 Wend., 381; Busby v. Conoway, 8 Md., 55; Prater v. Miller, 25 Ala., 320,* it was held an agreement not to oppose a will formed no consideration for a compromise, unless the party would be in some way interested in its defeat.—See also, *Jarvis v. Sutton, 3 Ind., 289.* And in *Rood v. Jones, 1 Doug., 188,* it was held an agreement not to attach prop-

erty, where there was nothing to attach, was no considera-
tion for a promise. But in the latter case, as in the best
considered cases generally, it is also held, that when parties
have acted without fraud, the burden is on the defendant to
defeat the agreement, which will be presumed good until facts
are alleged against it to invalidate it.—*Paris v. Dexter, 15
Vt., 379; Wade v. Simeon, 2 C. B., 565; Gould v. Armstrong,
2 Hall, S. C., 267.* And if the parties act in good faith,
even where they know all the facts, and there is a promise
without legal liability to base it on, the courts hesitate to
disturb the agreements of parties on any assumption that an
advantage which they have obtained, and conceive to be
worth paying for, is not to be considered valuable. The
decisions in this state have gone far to sustain such bargains.
—*Weed v. Terry, 2 Doug., 344; Van Dyke v. Davis, 2
Mich. R., 148; Moore v. Detroit Locomotive Works, 14
Mich., 266; Hull v. Swarthout, 29 Mich. R., 249; Gates
v. Shutts, 7 Mich. R., 127.* In *Van Dyke v. Davis*, the
party had no title whatever. In *Moore v. Locomotive Works*,
the defendant had become liable for not delivering machinery,
and it was regarded as an advantage gained to the plaintiff
to get the property, instead of a lawsuit for damages, so as
to uphold a waiver of delay. In *Gates v. Shutts*, the claim
was supposed to be barred by the statute of limitations.

The decisions generally hold that an agreement to settle
an existing suit is sustainable without reference to the merits
of the controversy, unless under very peculiar circumstances.
It is so held on the ground that an alteration in the posi-
tion of the parties may of itself be an advantage, and may,
in the absence of fraud or other controlling reason, be a
sufficient consideration. In *Cook v. Wright, 1 B. & S.,
559,* the court held that there could be no doubt whatever
that the compromise of a suit was a sufficient consideration;
but that the reason was not the saving of costs, but the
change of position, and that in all cases where parties had
so changed their position the same rule would apply. There
a person not personally liable for a rate, had compromised

it with the commissioners and agreed to pay the reduced sum, both knowing the facts, but differing as to the law; and he was held liable. In *Barlow v. Ocean Ins. Co., 4 Metc., 270,* it was held a settlement with an insurance company could not be disturbed by the subsequent discovery of facts which would have prevented it if known. In *Wade v. Simeon, 2 C. B., 565,* it was said that the fact that a plaintiff knew he had no cause of action would not necessarily defeat a compromise unless he knew he could not under any circumstances have got a verdict. In *Gould v. Armstrong, supra,* the test was likewise stated to be whether there " *could be* " any recovery. In *Union Bank v. Geary, 5 Pet., 113,* the parties were not ignorant of the facts, but the law was doubted. So in *Longridge v. Dorville, 5 B. & Ald., 117,* it was held a compromise would not fail unless it was clear there could be no possible liability.

The cases refer, among other things, to the contingencies of losing testimony as not to be disregarded. And in *Cooper v. Parker, 15 C. B., 822,* the doctrine is very broadly laid down. A defendant had pleaded infancy, which was not true in fact. The suit was compromised for a smaller sum, and that plea was by the same agreement withdrawn. The court held the plaintiff bound. *Parke, B.,* uses this language: "I cannot see why this is not a good plea. The value of the defendant's giving up the question in the action in the county court cannot be ascertained. In dealing with a plea of this sort, the court does not enter into a consideration of the value of the satisfaction if the plaintiff agrees to accept it. The advantage to the plaintiff of the defendant's giving up the plea of infancy in the county court, though an untrue one, might be great." *Martin, B.,* very briefly concurs by saying still more broadly, that parties should be allowed to have their agreements carried out as they make them. The decision was unanimous.

It is also held that the presumption will always be raised that pleadings are not put in for sham purposes or in bad faith, and that they cannot be attacked except upon aver-

ments to the contrary.—*Bidwell v. Catton, Hobart, 216; Smith v. Monteith, 13 M. & W., 426; Wilson v. City Bank, 17 Wal., 473.*

There is no reason for presuming unfairness when parties are merely relying on their legal rights, and no reason why they should be debarred from demanding compensation for giving them up. If there has been fraud or unfairness in bringing about a settlement, the want of any honest cause of action or probable defense, may be a fact to be considered among the rest.

In the present case Crowell does not appear on the pleadings as the moving party, and there is nothing to indicate fraud. He gave up valuable privileges, and the creditors got valuable benefits thereby, on which they put their own estimate. The bargain cannot be presumed to have been fraudulent, and the consideration is valid, unless the whole transaction was unlawful.

Upon the general question, see further, *Morey v. Newfane, 8 Barb., 653; Stoddard v. Mix, 14 Conn., 12; Farmers' Bank v. Blair, 44 Barb., 652; Atlee v. Backhouse, 3 M. & W., 633.*

So far as any question arises concerning fraud against Crowell's partners, we do not perceive how it can be presented on this record. If the defendants could set up any fraud against them to avoid the contract, upon which we need not pass here, such fraud is not to be presumed. And under the second count, which avers their consent, it must be likewise presumed to have been fairly obtained.

Neither do we think there is any ground for holding such an agreement to be in fraud of the bankrupt law. It has been held that secret agreements by favored creditors to withdraw opposition to the discharge of debtors, or to abstain from examining them, are void, because by their position in the case other creditors are at liberty to rely on their prosecuting all necessary inquiries and developing all important facts, which such agreements tend to smother. It is held such arrangements have a direct tendency to favor fraudulent

dealings with assets, and to conceal the truth upon the merits.—*Hall v. Dyson, 10 L. & Eq., 424; Dexter v. Snow, 12 Cush., 594; Tuxbury v. Miller, 19 J. R., 311; Bell v. Leggett, 3 Seld., 176; Nerot v. Wallace, 3 T. R., 17.* And on similar principles a secret promise to pay a creditor, who signs a compromise with others, and so induces them to regard him as acting without such an inducement, is held fraudulent.—*Case v. Gerrish, 15 Pick., 49.*

But a debtor who devotes all his property to be used ratably for all his creditors does what the law highly favors and approves. This is the very aim and purpose of the bankrupt law, and the only end for which the petition in bankruptcy was filed. No act can be in fraud of a law which it is intended and calculated to carry out. Crowell merely bargained to submit to the purposes of this law, when he had before resisted the attempt to bring him within it. If it had been a bargain to conceal or withdraw his assets from distribution, or to procure a collusive discontinuance of the suit after other creditors had appeared, there might have been some reason for doubting its validity. But an agreement to submit to a bankruptcy decree, and to have the estate disposed of in due course of law, is entirely proper and valid.

The judgment should be reversed, and the demurrer overruled, with costs, and the cause remanded to the court below, that the defendants may plead over.

The other Justices concurred.