CITY OF HIGHLAND PARK v. GRANT-MACKENZIE COMPANY.

1. FRAUDS, STATUTE OF—HOSPITAL SERVICES—ORIGINAL LIABILITY—
EVIDENCE.
    Plaintiff hospital which rendered services to patient on his
    third period of hospitalization *held*, under record presented,
    reasonably entitled to assume that defendant corporation,
    through its representative, had agreed to accept original lia-
    bility for expense that might be incurred in treating the
    patient, who had been an employee of defendant, over and
    above the small amount of his hospitalization insurance and
    other benefits of like nature and to justify trial court's find-
    ing that the services were rendered in reliance on that promise
    and not upon the patient's individual credit, it appearing
    that on the 2 previous occasions the insurance benefits were
    first applied to the bill and defendant had paid the balance
    (CL 1948, § 566.132).

2. SAME—DEBT OF ANOTHER—SIGNED MEMORANDUM.
    Every agreement, contract, or promise to answer for the debt,
    default, or misdoings of another person is void under the
    statute of frauds, unless the promise or some note or memoran-
    dum thereof be in writing and signed by the party to be
    charged therewith, or by some other person lawfully authorized
    (CL 1948, § 566.132).

3. SAME—PROMISE TO PAY FOR FUTURE SERVICES TO THIRD PERSON—
ORIGINAL OBLIGATION.
    A promise to pay for such services as may be furnished to a
    third person is an original, and not a collateral, promise, is
    based on a sufficient consideration, and is not within the
    statute of frauds as a promise to pay the debt or default of
    another, hence, need not be in writing (CL 1948, § 566.132).

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 5]  12 Am Jur, Contracts § 17.
Applicability of statute of frauds to promise to pay for medical,
    dental, or hospital services furnished another.  64 ALR2d 1071.
[2]  12 Am Jur, Contracts §§ 60, 61; 49 Am Jur, Statute of Frauds
    § 60 et seq.
[4]  49 Am Jur, Statute of Frauds § 63.

4. Same—Intent—Prior Dealings.

> Prior dealings between parties who are involved in an agreement sued upon in which the statute of frauds is interposed to bar recovery were properly given consideration in determining their intent (CL 1948, § 566.132).

5. Contracts—Consideration.

> The consideration for a promise may inure to one other than the promisor or may lie in a detriment to the promisee.

Otis M. Smith, J., dissenting.

Appeal from Wayne; Bowles (George E.), J. Submitted October 11, 1961. (Docket No. 63, Calendar No. 48,899.) Decided May 17, 1962.

Action by City of Highland Park (Highland Park General Hospital), a municipal corporation, against Grant-Mackenzie Company, a Michigan corporation, for hospital care and services rendered a former employee of defendant. Judgment for plaintiff. Defendant appeals. Affirmed.

*Colin J. McRae,* City Attorney, and *George W. Moore,* Assistant City Attorney, for plaintiff.

*Albert L. Lieberman* and *Martin M. Miller,* for defendant.

Otis M. Smith, J. (*dissenting*). This case presents a statute of frauds question as to whether or not certain statements made by an employer to a hospital, concerning care of an employee, constitute a promise within the statute of frauds.

Plaintiff and appellee filed its declaration setting forth the following allegations: That one Sam Chernick, who was a valuable employee of defendant Grant-Mackenzie Company, was admitted to the hospital on July 31, 1957, and that he was given hospital care and thereafter discharged; that on 2 subsequent occasions he was readmitted to the hos-

pital and discharged. It was further alleged that after each stay in the hospital the cost of care exceeded the patient's insurance benefits. The declaration stated further that after the first 2 periods of hospitalization the defendant company paid the balance due on each bill after the insurance benefits had first been exhausted. This was done allegedly in accordance with an agreement between plaintiff and defendant because it was of pecuniary value to the defendant to have the defendant's employee, Chernick, treated and returned to his work as quickly as possible.

The third and final time that Chernick was hospitalized the defendant refused to pay as before whereupon plaintiff brought suit, claiming judgment in the sum of $1,977.15 with interest, costs, and attorney fees.

In its answer, the defendant admitted that Chernick was an employee on the first 2 occasions when he was hospitalized, and further that it had in fact paid the sums as alleged, but it denied that payments were made in accordance with any agreements. It denied that Chernick was an employee at the time of the third admission. The defendant also pleaded as an affirmative defense that the plaintiff's claim is void under the statute of frauds.

At the trial, an employee, Archie Simpson, of the plaintiff-hospital, testified as to the 3 periods of hospitalization of Chernick. Simpson then testified that a coversation took place between himself and an officer of the defendant company on January 23, 1958, which was 1 day after Chernick was admitted to the hospital for the third time. The testimony tended to show that there was a discussion by telephone of the insurance coverage left to cover the cost of Chernick's hospitalization. Simpson said that he asked the officer of the defendant corporation whom to look to for payment of the balance

after Chernick's benefits were exhausted.  He stated that the answer given to him was "What are you afraid of, we paid your other bills and are taking care of them.  You send us the bill for this one and we will see that you get paid."

Plaintiff's exhibit 1, which was admitted without objection, was a hospital record card which contained a number of items of information, including the notation "responsible party, insurance."  The exhibit also showed certain payments, which were explained to be in part from the insurance company carrying Chernick's hospitalization, part in cash, and a third part from checks indorsed by Chernick and turned over to the hospital.

At the close of plaintiff's proofs, the defendant made a motion for a judgment of no cause of action on the grounds that the method employed in collecting the hospital bill indicated that Chernick was the party whom the plaintiff considered to be primarily liable, and that, at best, what the plaintiff had obtained from the defendant was a collateral promise not in writing.  The court withheld decision on the motion and ordered that proofs be taken from the defendant.

An officer of the defendant company then testified that he had no conversation with plaintiff's employee on January 23, 1958, as alleged.  He stated that a conversation was held by phone in April of that year. He further testified that Chernick had worked for the company about 6 years and for a predecessor company a number of years.  He stated that Chernick had last worked for the company in December, 1957, and that Chernick simply ceased to be able to work any longer.  It was admitted by the defendant's officer that at or about the time of Chernick's first stay in the hospital, he had indicated to the hospital that it would be paid as it had been paid before.  He says, however, that the prior transac-

tion referred to involved another employee and not Chernick.

After the defendant rested its case, plaintiff recalled its employee, Simpson, for rebuttal. Over defendant's objection, plaintiff's exhibit 2 was admitted. Among other things, it contained a notation made by Simpson as follows: "1/23 Mr. Grant will pay bal." This, the witness said, indicated a conversation in which the defendant's officer, Grant, agreed to pay the balance on Chernick's bill.

The trial judge held that a conversation did take place as the plaintiff claimed and that the defendant's officer did say, "You send us the bill for the one and we will see that you get paid." The court also found that considering the relationship of Chernick to the defendant, that the statement made by the defendant to the plaintiff showed that it was an independent promise original in its nature and therefore not within the statute of frauds. The trial judge also found that Chernick was still an employee of the defendant company, and that there was adequate legal consideration for the defendant's promise flowing from the employer-employee relationship, the anticipation of Chernick's future services as well as his past services, and that this no doubt was the reason as well as the consideration for defendant's promise made to plaintiff.

The appellant company contends that the promise made by its officer was within the statute of frauds since it was an oral collateral promise to answer for the debt of another person and was without consideration. The appellant argues that hospital records show that plaintiff was looking to Chernick's insurance for primary satisfaction of its debt; further, that the taking of checks to the sickbed of Chernick, where they were indorsed over to the hospital, proved appellee's intention to hold Chernick primarily liable. The appellant cites several cases

for the principle that the consideration received by a promisor sufficient to take a promise out of the statute of frauds must be in the nature of a benefit which he did not before enjoy and which accrued immediately to the promisor. Appellant argues that the trial court's finding that consideration flowed from the employer-employee relationship and in anticipation of Chernick's future services was wholly without basis.

The appellee hospital contends "that the corporation conceivably contemplated that Chernick would return to its employ as he had on 2 previous occasions." It argues that had not the hospital obtained the assurance from Chernick's employer to pay the amount in excess of insurance coverage that it would have transferred Chernick to a Detroit hospital inasmuch as he was a Detroit resident. Appellee urges that this Court does not reverse a trial judge unless the evidence clearly preponderates in the opposite direction. It argues that there was sufficient evidence, although in dispute, upon which the trial judge could make his findings.

It is elementary that under the statute of frauds every special promise to answer for the debt, default, or misdoings of another person is void unless the promise or some note or memorandum thereof be in writing and signed by the party to be charged therewith, or by some other person lawfully authorized. CL 1948, § 566.132 (Stat Ann 1953 Rev § 26.922). This particular segment of the statute has remained virtually unchanged since its original adoption. There are, then, a large number of cases interpreting this section of the statute. Great inconsistency has arisen over whether or not a promise is original or collateral.*

---

* 22 LRA NS 1077; 49 Am Jur, Statute of Frauds, § 62; 64 ALR2d 1071.

The trial judge was certainly correct in his opinion that:

"Frequently distinctions have been made by courts on the basis of whether the promise made is an original or a collateral promise, the latter falling within the statute of frauds and the former without, but while this is a convenient expression for distinguishing cases within and without, it really isn't very helpful."

It is not difficult to agree with Professor Corbin that "if the terms are of any service, they can be so only as terms descriptive of a result arrived at on grounds quite independent of the terms themselves. They could be restricted so as to mean by 'original' that the promise is for any reason not within the guaranty clause of the statute, and by 'collateral' that it is within that clause."*

Chief Justice Cooley in *Calkins* v. *Chandler,* 36 Mich 320, 324 (24 Am Rep 593), wrote that "In many cases the test whether a promise is or is not within the statute of frauds is to be found in the fact that the original debtor does or does not remain liable on his undertaking: if he is discharged by a new arrangement made on sufficient consideration, with a third party, this third party may be held on his promise though not in writing; but if the original debtor remains liable and the promise of the third party is only collateral to his, it will in strictness be nothing more than a promise to answer for the other's debt." This comment of Chief Justice Cooley reflects only 1 of a number of tests used in determining whether or not a promise is within or without the statute of frauds.

Another oft-quoted Michigan case is *Larson* v. *Jensen,* 53 Mich 427. In the *Larson Case,* this Court used the test of whether or not the sole and entire

---

* 2 Corbin on Contracts, § 348.

credit of the promisor was pledged with the promisee relying thereon. The strong instructions of the trial judge on this point were upheld by this Court. Another test was applied in the case of *Durgin* v. *Smith,* 115 Mich 239. In that case, this Court held where the agreement was entered into for the benefit of the promisor, upon a consideration passing to them, the oral promise was not within the statute even though the original debtor remained liable. Other cases hold that where the leading object of the promisor is to serve his own interests, the promise is not within the statute. See 11 Callaghan's Michigan Civil Jurisprudence, Frauds, Statute of, § 17, and cases cited thereunder.

The character of a promise does not entirely depend upon the form of expression; it depends, to some extent, upon the situation of the parties and what the parties intended.

We find no fault with the trial judge's findings that a promise was made by an officer of the company to an employee of the hospital, and that the promise was meant to include that portion of Chernick's bill remaining after the application of insurance benefits and personal resources, whatever that might be. However, from a careful review of the entire record we find nothing which supports the holding that the promise was made out of anticipation of Chernick's future services. The promise could have been made out of the beneficence of the employer, or for sympathetic reasons, or by virtue of some other motivation. No testimony was elicited to show that the employer expected Chernick to return to work, nor that there was any new consideration running to the employer. A judgment may not be based upon speculation or conjecture, however plausible. *Michigan Aero Club* v. *Shelley,* 283 Mich 401 (1938 US Av 134, 1 CCH Av 750).

Neither can we find for the hospital by applying the sole credit test. From the facts as found by the trial judge it seems that the services were not rendered by the hospital upon the sole credit of the employer, but upon the joint credit of both employer and employee. This seems amply demonstrated by all 3 transactions involving the hospitalization of Chernick. In connection with each of the first 2, first the insurance benefits were applied to the bill and then the employer paid the balance. In the third transaction, about which we have the present litigation, the insurance benefits were first applied to the bill, then Chernick was solicited by the hospital to apply all of his personal resources toward payment. Thereafter, the hospital sought to collect the balance from the employer. We conclude that the promise was collateral and therefore within the statute of frauds.

The judgment should be reversed and remanded with instructions that a judgment be entered for the defendant. Costs to the defendant-appellant.

Carr, C. J. Plaintiff brought this action in the circuit court of Wayne county to recover for hospital and medical services rendered to one Sam Chernick on the alleged oral promise of the defendant to pay therefor. It appears that for several years Chernick had been an employee of the defendant corporation, of which Earl Grant, joined as a defendant, was the secretary. The declaration filed in the case alleged that on or about January 22, 1958, Chernick was admitted to plaintiff's hospital for care and treatment, that it was determined that the patient was without funds to pay therefor, having only limited hospitalization insurance benefits, and that the duly authorized representative of plaintiff consulted with secretary Grant relative to such payment. It was averred that an agreement was made on behalf of

Grant and his company that all charges in excess of Chernick's hospitalization insurance benefits would be paid by defendants. Plaintiff further alleged that in reliance upon such agreement which, it is claimed, was made on the day following Chernick's admission to the hospital, medical services and hospital care were furnished to him until April 26, 1958, at which time he was discharged, and that the total charges for said period were $2,309.35 of which amount $332.20 was paid from hospitalization insurance and similar benefits to Chernick, leaving an unpaid balance payable to plaintiff from defendants in the sum of $1,977.15, to recover which amount, with interest, the action was brought.

It further appears from plaintiff's pleading, and from the proofs in the case, that on 2 prior occasions Chernick had been furnished treatment and care in plaintiff's hospital, that he was without funds or other means of paying in full therefor, and that on each such occasion an agreement had been made, and performed, whereby the defendant corporation paid to plaintiff the balance of its claim for the care of Chernick over and above his insurance benefits.

Defendants by answer to plaintiff's declaration denied liability, asserting that they had made no covenant or agreement with the plaintiff as alleged in the declaration. By way of affirmative defense it was further asserted that plaintiff's claim was void under the statute of frauds.

On the trial of the case the parties were not in accord as to precisely what was said in the conversation between plaintiff's representative, its credit manager, and Mr. Grant with reference to the payment for Chernick's hospitalization. The following excerpt from the testimony of plaintiff's witness who participated in the conversation fairly indicates its claim:

"*Q.* On or about the time of Mr. Chernick's last admission to the hospital, did you have any conversation with the defendant Earl Grant?

"*A.* Yes, sir.

"*Q.* Do you recall when that conversation was?

"*A.* Yes, sir.

"*Q.* When was it?

"*A.* January 23, 1958.

"*Q.* Was that personally, or by telephone?

"*A.* By telephone.

"*Q.* And do you recall, did you call him or did he call you?

"*A.* I called Mr. Grant.

"*Q.* Had you previously talked to Mr. Grant?

"*A.* Yes, on previous occasions I had.

"*Q.* And did you recognize Mr. Grant's voice when you talked to him this last time?

"*A.* Yes, sir.

"*Q.* Do you recall what you said to him and what he said to you on that occasion?

"*A.* Yes, sir.

"*Q.* Would you please state what was said?

"*A.* I informed Mr. Grant that Mr. Chernick had very, very little insurance coverage left, and I then asked him to whom I was going to look for payment of the balance. And his answer to me was, 'What are you afraid of, we paid your other bills and are taking care of them. You send us the bill for this one and we will see that you get paid.'

"*Q.* Do you know how long Mr. Chernick remained in Highland Park Hospital?

"*A.* A considerable time, sir. It was in April that he left."

It was in effect plaintiff's contention that the conversation related to payment for future services to be rendered to Chernick and not to any accrued bill, and that in reliance on the assurance given as to payment for the services Chernick remained in the plaintiff's hospital and was treated and cared for therein until his discharge in April. That such services

were rendered is not in dispute, nor is there any question involved as to the reasonableness of the charge therefor. The precise question at issue is whether the representative of defendant corporation promised that in consideration for the rendition of the contemplated services to Chernick the corporation would make payment of the reasonable value thereof. The trial judge, hearing the case without a jury, determined the issues involved in favor of the plaintiff and rendered judgment against the defendant Grant-Mackenzie Company in the sum of $1,977-.15, with costs to be taxed. The case was dismissed as to defendant Grant. From the judgment against the corporation an appeal has been taken to this Court.

In substance, it is the claim of appellant that the services for which plaintiff seeks to recover were actually rendered on the credit of Chernick, and that any promise made by it to plaintiff's credit manager was merely collateral in nature. Plaintiff insists that the services were rendered on the credit of defendant and on the assurance that the bill would be paid thereby as prior bills had been paid. It is claimed on behalf of appellee that it was justified in construing the conversation between its representative and Mr. Grant as meaning that the same nature of liability was being assumed by Grant-Mackenzie Company as had been recognized on the prior occasions. In effect, it is claimed that Chernick was retained as a patient because of the assurance given with reference to payment. In connection with the care of patients situated as was Chernick the following excerpt from the testimony indicates the situation:

"*Q.* Do you know where Mr. Chernick lived at the time of his last admission to the hospital?

"*A.* He lived on Ryan road, seventeen thousand something.

"*Q*. Is that in Highland Park or Detroit?

"*A*. That is in Detroit.

"*Q*. Are Detroit charity patients served in Highland Park General Hospital, if you know?

"*A*. Not as a general rule.

"*Q*. What is ordinarily done with a Detroit charity patient?

"*A*. If it is an emergency admission, we take care of the emergency and then as soon as the doctor gives us permission, we call an ambulance and transfer the patient to Detroit Receiving Hospital.

"*Q*. Was this done with Mr. Chernick, if you know?

"*A*. No, sir."

On the basis of the record before us we think the plaintiff was reasonably entitled to assume that defendant corporation had agreed through its representative to accept original liability for expense that might be incurred in treating Mr. Chernick over and above the small amount of his hospitalization insurance and other benefits of like nature. We think it may be said, also, as the trial judge obviously found, that the services were rendered in reliance on that promise. It is apparent that plaintiff did not rely on Chernick's individual credit.

This Court has in numerous prior decisions dealt with the application of the statute of frauds* in situations analogous to that in the case at bar. The specific provision of said statute here involved declares to be void every agreement, contract and promise, unless in writing, or evidenced by a written note or memorandum in writing signed by the party to be charged, or by some person thereunto by him lawfully authorized, "to answer for the debt, default or misdoings of another person." A frequently cited decision of this Court on the subject is *Larson* v. *Jensen*, 53 Mich 427, where it was held:

* See CL 1948, § 566.132 (Stat Ann 1953 Rev § 26.922).

"A promise to pay for such goods as may be furnished to a third person is an original and not a collateral promise, is based on a sufficient consideration, and is not within the statute of frauds as a promise to pay the debt or default of another; it need not therefore be in writing." Syllabus 1.

Significant also is the decision in *Chappel* v. *Barkley,* 90 Mich 35. There the plaintiff, a physician, had been treating the father of the defendant during an illness. After a bill for professional services in the amount of $27 had accrued defendant told plaintiff to charge the bill to him and also to charge him for services thereafter rendered to the father. Subsequently suit was brought against defendant to recover on his promise. It was held that so far as the indebtedness in existence at the time defendant made his promise was concerned it was within the terms of the statute but his liability for services rendered thereafter was sustained, obviously on the theory that the subsequent services had been furnished to the father on the credit of the son. It was thus recognized that the promise to pay for services to be rendered was an original obligation. See, also, *Ford* v. *McLane,* 131 Mich 371.

In *Willox* v. *Townsend,* 245 Mich 632, plaintiff was a subcontractor working for one Schroeder who was engaged in constructing a building for defendant. Defendant orally promised plaintiff that if he would complete his work he would pay him therefor. Plaintiff recovered judgment in the trial court and defendant appealed, asserting, among other alleged errors, that the promise was one to pay Schroeder's debt and was within the statute of frauds. In rejecting such claim it was said:

"Plaintiff's testimony was that defendant promised to pay if plaintiff would complete the work; that he completed it in all respects except in one, in regard to which he was prevented from performance

by defendant's daughter and by an immediately subsequent letter from defendant himself. This was sufficient consideration."

In *Benjamin* v. *Bondy*, 322 Mich 35, action was brought by the plaintiff to recover burial expenses of a minor, the defendants in the case being the father of said minor and his maternal grandparents. Motion to dismiss as to the grandparents was made on the ground that the primary liability for the funeral expenses of the boy rested on the parent. It appears that the father had promised to pay the expenses if burial was had in the cemetery designated by him. The grandparents discussed the matter with plaintiff and agreed to assume all expenses which amounted to approximately $597. The case was determined on the basis of the liability of the grandparents on their verbal contract and this Court held that the grandfather was liable, the judgment below against the grandmother being reversed on the ground that the agreement did not inure to the benefit of her sole and separate estate. Assuming that the primary liability in the case was that of the father of the deceased, the grandparents had nonetheless by their verbal undertaking assumed original and direct liability. The situation is analogous to that in the case at bar. It seems to be generally recognized that one may assume original liability by a direct promise to pay for services to be rendered to another. *Kennedy* v. *Dzengielowski,* 131 Misc 635 (228 NYS 435), affirmed 225 App Div 845 (232 NYS 786) and 251 NY 520 (168 NE 412).

An interesting decision is *Peterson* v. *Rowe,* 63 NM 135 (314 P2d 892, 64 ALR2d 1067). There it appears the father of defendants was seriously ill and was taken to plaintiff's hospital. Defendants informed plaintiff that the father was without financial means but that they would pay for his care. They neglected to do so. Suit was brought and they were

held liable on the theory that their promise was an original undertaking and, hence, not within the statute of frauds. It was claimed on behalf of defendants that the plaintiff did not release the patient from liability, but the court held that such fact was immaterial for the reason that appellants had contracted for the rendition of the services. This decision is followed by an annotation in 64 ALR2d 1071 citing many decisions in each of which the defendant was held liable on the verbal promise to pay for services, hospitalization, and medical care rendered to another.

Under the facts in the instant case we think the conclusion is justified that it was the intention of the parties at the time of the conversation between plaintiff's representative and Mr. Grant that the defendant corporation would assume direct responsibility for the payment of the expenses of Chernick over and above his hospitalization insurance. In interpreting the language used by the parties their prior dealings were properly given consideration. The direct reference in the conversation, by Mr. Grant, to such dealings is significant. On the matter of intent the following quotation from 49 Am Jur, Statute of Frauds, § 91, pp 448, 449, is of interest:

"The most frequent application of the general rule that the intent of parties is material in determining whether a promise is within the statute of frauds is found in cases where the determination of the question whether the promise is within the statute is dependent upon whether credit, at the time an obligation was incurred for the benefit of another, was extended solely to the promisor or also to such third person. In ascertaining the person to whom credit was extended, the intention of the parties must govern. This intention should be ascertained from the words used in making the promise, the situation of the parties, and all the circumstances sur-

rounding the transaction. The real character of the promise does not depend altogether on the form of expression, but largely on the situation of the parties, and the question is always what the parties actually understood by the language—whether they understood it to be a collateral or a direct promise. In arriving at the intention of the parties, the language used by the promisor is given great weight, and will be construed in accordance with the usual meaning of the terms employed, unless the surrounding facts and circumstances and the conduct of the parties show that it was used in a different sense. A promise to see that the seller is paid, standing alone and uncontrolled by circumstances showing a contrary intent, usually implies that someone else is also bound upon the obligation for the purchase price, and therefore will be construed to be a collateral undertaking within the statute of frauds; yet if it was the understanding of the parties that the credit should be extended solely to the promisor, the use of such phrase will not bring the promise within the statute.

"If it appears from the surrounding facts and circumstances that it was the intent of the promisor, in using language of this character, to be bound primarily, his promise will be so construed and will be held not within the statute."

It was not essential that the consideration for the promise should have moved directly to defendant corporation. As before pointed out, the agreement related to future services to be furnished to Chernick. It did not concern any existing indebtedness, which obviously the small amount of hospitalization insurance was sufficient to cover. Admittedly the services that the parties contemplated were furnished.

That the consideration for a promise may inure to one other than the promisor or may lie in a detriment to the promisee is a well-established principle

of contract law. Such was the holding in *Arctic Dairy Co.* v. *Winans,* 267 Mich 80 (94 ALR 334). In reaching such conclusion the Court cited *Sanford* v. *Huxford,* 32 Mich 313 (20 Am Rep 647), *Larson* v. *Jensen, supra,* 6 RCL p 655, 1 Page on Contracts, § 529, and other authorities including decisions of the United States supreme court. In *Plastray Corporation* v. *Cole,* 324 Mich 433, 440 (8 ALR2d 1199), this Court quoted (p 440) with approval from *Arctic Dairy Co.* v. *Winans, supra,* 88, 89, as follows:

" ' "The rule as to consideration for agreements * * * there must be a benefit on one side, or a detriment suffered, or service done on the other. *The benefit rendered need not be to the party contracting, but may be to anyone else at his procurement or request."* *Sanford* v. *Huxford* (syllabus), 32 Mich 313 (20 Am Rep 647). * * *

" ' "There are many cases in which there is a detriment to the promisee with no corresponding benefit to the promisor. Sometimes the benefit is derived solely by a third person. Hence the consideration to support a promise need not involve benefit to the promisor." 6 RCL p 655.

" ' "Consideration moving from promisee, but not to promisor. The consideration may consist of a legal right which B gives up often to some third person, X, and of which A does not receive the benefit. Such consideration is sufficient." 1 Page on Contracts, § 529. * * *

" ' "Damage to the promisee constitutes as good a consideration as benefit to the promisor." * * *

" ' "A consideration which, by the terms of the contract, the promisee furnishes to a third person and not to the promisor is sufficient." 1 Page on Contracts, 1919–1929 Supp § 529, citing several cases.' "

The principles recognized in the language above quoted were involved in *WKBW, Inc.,* v. *Children's Bible Hour,* 332 Mich 569, where it was said that the benefit that may result from the carrying out of a

promise need not be to the contracting party. The Court (pp 576, 577) quoted with approval the following from *Sanford* v. *Huxford, supra,* 315:

" 'The rule as to consideration for agreements to abstain from litigation, present or contemplated, does not seem to differ from that relating to any other contract, although upon the facts difficulties often arise. The rule seems to be well determined, that there must be a benefit on one side, or a detriment suffered or service done on the other. We find nothing to indicate that the benefit rendered need be to the party contracting, if it is to anyone else at his procurement or request, any more than in other contracts.' "

We think that the circuit judge correctly disposed of the issues, factual and legal, in the case at bar, and that the judgment entered should be affirmed, with costs to plaintiff.

DETHMERS, KELLY, BLACK, KAVANAGH, and SOURIS, JJ., concurred with CARR, C. J.

ADAMS, J., took no part in the decision of this case.