CREST THE UNIFORM COMPANY,
INC., Plaintiff,

v.

John F. FOLEY, individually, Career
Uniform Corporation and Foley's Ann
Arbor Uniform, Inc., jointly and sever-
ally, Defendants.

No. 92–74887.

United States District Court,
E.D. Michigan, S.D.

Nov. 6, 1992.

Hardy Lewis Pollard & Page by David M. Davis, Birmingham, Mich., for plaintiff.

Cohen & Ellias, P.C. by Steven Z. Cohen, Kenneth Lee Rosen, Bloomfield Hills, Mich., for defendants.

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY OF JOHN F. FOLEY, INDIVIDUALLY

GADOLA, District Judge.

Plaintiff filed its complaint August 17, 1992. Defendants filed an answer and counter-complaint August 28, 1992. Also on August 28, 1992, defendants filed a motion for summary judgment as to the liability of defendant John F. Foley in his individual capacity. On September 10, 1992, plaintiff responded to defendants' motion for summary judgment. Defendants filed no reply. On September 18, 1992, plaintiff answered defendants' counterclaims.

## I. Background Facts

Defendant John F. Foley ("Foley") is the president of Foley's Ann Arbor Uniform, Inc. ("Ann Arbor") and was the president of Career Uniform Corporation ("Career"), a corporation that was dissolved in February 1992. Plaintiff Crest Corporation ("Crest") has been a supplier of uniforms to both defendant corporations since 1978. Plaintiff has commenced this action seeking to recover from all defendants, jointly and severally, $96,194.50 allegedly owed to plaintiff for goods delivered. In response to defendant Foley's motion for summary judgment as to his personal liability, plaintiff alleges the following facts and supports its allegations with, among other exhibits, the affidavit of Fred Mandato, president of plaintiff corporation:

As of January 1987 defendant Career owed plaintiff $64,429.00 for unpaid deliveries. Because of this outstanding debt, Mandato notified defendant Foley that it could no longer sell or deliver goods to his corporations. On January 29, 1987, in response to this notice and "to encourage [Crest] to extend credit to Career," defendant Foley and his wife, Mary Foley, executed a guarantee agreement whereby defendant and his wife "jointly and severally guarantee[d] payment by Career to [Crest] of up to Fifteen Thousand and no/100 ($15,000.00) Dollars of sums owed [Crest] by Career from time to time for purchases after January 22, 1987." Ex. A to Plaintiff's Res. The guaranty further states that "such guaranty shall not extend to amounts due and owing [Crest] by Career for purchases on or before January 22, 1987." Id.

On February 5, 1988, Career and Crest entered into a written agreement whereby Career agreed to pay the $64,429.01 owed to plaintiff in sixty monthly installments of $1,073.82 with no interest charge. By February 1991, Career had reduced to $32,214.41 the debt owed to plaintiff Crest.

Between May 1991 and October 1991, Mandato, in reliance on the January 29, 1987 personal guarantee of defendant Foley and his wife, shipped $9,116.51 in goods to defendant Career. On January 6, 1992, Mandato advised defendant Foley that plaintiff Crest would ship no more goods to defendants because defendant Career then held an outstanding indebtedness of $41,330.92.

On January 9, 1992, defendant Foley sent a letter to Mandato requesting that plaintiff Crest continue to sell and deliver goods to defendant Ann Arbor. As consideration for plaintiff's continuing business, defendant Foley proposed that defendant Career's debt to Crest would be repaid and offered a personal and unconditional guarantee by defendant Foley of any new debt incurred by defendant Ann Arbor of over $75,000.00 and up to $125,000.00. Mandato informed defendant Foley on January 10, 1992, that defendant's offer was not sufficient; plaintiff would ship to defendant no more goods without a personal and unconditional guarantee of all outstanding debt owed plaintiff, as well as a personal guarantee of any new debt. Mandato further required that the guarantee be supported by a personal financial statement of defendant Foley.

In January 1992, defendant Foley told Mandato that he was considering filing for bankruptcy. Later that month defendant Foley told Mandato that instead of filing for bankruptcy he had decided to apply for a bank loan. Defendant Foley requested that plaintiff agree to ship goods to defendant Ann Arbor cash-on-delivery for the next thirty days while defendant Foley attempted to procure the loan. Defendant Foley allegedly assured Mandato that, based on his personal net worth, he would easily obtain the loan and that, from the proceeds of this loan, defendant Foley would pay plaintiff the debt owed by defendant Career. Plaintiff considered these statements of defendant Foley to constitute a personal guarantee to pay the outstanding debt of defendant Career. Plaintiff claims that it was in reliance on this "guarantee" that plaintiff recommenced shipping goods to defendant Ann Arbor.

Sometime between early February and early March 1992, defendant Foley told Mandato that, instead of pursuing the bank loan, he was attempting to sell some personal real estate and was planning to satisfy the debts owed to plaintiff with proceeds from this transaction. Defendant asked that plaintiff continue shipping goods cash-on-delivery for another thirty days. Later, in March 1992, defendant Foley spoke with Mandato and again gave assurances that he would pay plaintiff from the proceeds of the real estate sale. To prove to Mandato that the sale was imminent, defendant Foley telefaxed to Mandato a statement signed by a prospective buyer expressing that buyer's desire and intent to purchase defendant Foley's property.

In April 1992, plaintiff again told defendant Foley that goods would no longer be shipped to defendants because of the outstanding debt owed plaintiff. At this time, defendant Foley agreed verbally to personally guarantee the entire debt owed to plaintiff Crest by defendants Career and Ann Arbor and agreed to submit in writing confirmation of this promise; by this time, the debt totaled $100,244.00. On April 16, 1992, Mandato sent defendant Foley a letter stating that plaintiff Crest would continue shipping goods conditioned upon receipt of defendant Foley's personal guarantee. On May 21, 1992, Mandato again wrote to defendant Foley advising Foley that Mandato had not yet received the guarantee. Defendant Foley did not respond to either of these letters. At the end of May 1992, plaintiff Crest stopped all shipments and refused to extend further credit to defendants.

Plaintiff claims that from approximately January 1991 through May 1992, plaintiff shipped goods to defendant Foley's corporations in reliance on the personal guarantees of defendant Foley. The outstanding balance owed for this period is $54,863.58. Defendant Crest also still owes $32,241.41 from deliveries made prior to January 1987 and $9,116.51 for goods shipped between May and October 1991.

The preceding facts are taken from the seven-page affidavit of Fred Mandato, president of plaintiff Crest. Defendant Foley filed no reply to plaintiff's response and the allegations contained therein; thus, plaintiff's very specific factual allegations stand uncontroverted. To his motion for summary judgment, defendant Foley merely attaches a one-page affidavit containing his sworn testimony that he never personally guaranteed any of the debts of his corporations. At the hearing on this motion held before this court October 21, 1992, counsel for defendant Foley stated that although the real estate at issue in the alleged conversations between defendant Foley and Mandato was not sold immediately around the time the conversations took place, it since has been sold.

## II. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citation omitted). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

To show that there exists a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed. R.Civ.P. 50(a). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some

doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

## III. Analysis

In support of his motion for summary judgment, defendant Foley makes two arguments. First, defendant Foley argues that his corporations were duly incorporated under the laws of Michigan and that therefore his liability as the sole shareholder and president of the corporations is limited to his capital investment in the corporations. Second, defendant Foley argues that he "never personally guaranteed nor consented to be liable for any of the corporate obligations." Defendant's Brief at 5. Defendant Foley concludes that plaintiff therefore cannot "pierce the corporate veil," and thereby hold defendant Foley personally liable for corporate debts.

Plaintiff claims that the issue of whether the corporate veil can be pierced in this case is raised prematurely. Defendant Foley filed this motion for summary judgment on the same day defendants filed their answer to plaintiff's complaint. Thus, no discovery has yet been taken through which plaintiff might establish whether a claim for piercing the corporate veil is warranted.

Plaintiff's response to the motion for summary judgment is twofold. First, plaintiff presents a written guaranty agreement evidencing that defendant Foley did in fact guarantee up to $15,000.00 of the debts owed by defendant Ann Arbor. Second, plaintiff claims that an oral agreement was formed.

Exhibit A to plaintiff's response is a guaranty agreement wherein defendant Foley agrees to personally guarantee any new debts of defendant Career up to $15,000.00. The document is signed by defendant Foley and by his wife, Mary E. Foley. This evidence tends to establish that defendant Foley, through this document, is personally liable for at least that part of defendant Career's debt, if any be proven, incurred subsequent to the date of this guarantee.

As to the remaining debts of defendants Career and Ann Arbor, plaintiff alleges that defendant Foley made an oral agreement with plaintiff Crest's president, Fred Mandato, that in consideration for plaintiff's continuing to do business with defendant Ann Arbor in spite of the debts owed to plaintiff, defendant Foley would personally guarantee the past debts of defendant Career and the past and future debts of defendant Ann Arbor. Plaintiff further claims that even if the oral agreement is held, in part or whole, to be invalid under the statute of frauds, defendant Foley is estopped from raising that defense under the doctrine of promissory estoppel. Plaintiff argues that, in extending credit to defendant Ann Arbor, it was acting in detrimental reliance on the promises of defendant Foley that he would personally guarantee all debts owed to plaintiff by defendant Foley's corporations.

A promise to pay for the *past* debts of another is a collateral promise and as such falls under the statute of frauds which requires that certain contracts be in writing to be enforceable. *Gillhespy v. Bolema Lumber and Bldg. Supplies*, 5 Mich.App. 351, 355, 146 N.W.2d 666 (1966); *City of Highland Park v. Grant–McKenzie Co.*, 366 Mich. 430, 435, 115 N.W.2d 270, *et seq.* (1962); *Chappel v. Barkley*, 90 Mich. 35, 36, 51 N.W. 351 (1892). However, a promise to pay for goods and services as may be furnished to a third person *in the future* is an original and not a collateral promise, if based on a sufficient consideration. *Gillhespy*, 5 Mich.App. at 355, 146 N.W.2d 666; *Grant–McKenzie Co.*, 366 Mich. at 435, 115 N.W.2d 270, et seq.; *Chappel*, 90 Mich. at 36, 51 N.W. 351; and see Stephen J. Haszto, John James Palmer and Marvin Owen Meier, *Callaghan's Michigan Civil Jurisprudence*, Statute of Frauds, § 17. Thus, in this case, that part of defendant Foley's alleged oral agree-

ment with plaintiff wherein defendant Foley agreed to guarantee the past debts of his corporations appears to be a collateral promise covered by the statute of frauds; whereas defendant Foley's alleged promise to pay the future obligations, supported by the consideration that defendant Foley's corporations would continue to be shipped goods, is an original promise not subject to the statute of frauds. On the latter issue, the court finds that plaintiff has alleged sufficiently facts that would support a finding by a jury that defendant Foley did make an enforceable oral promise to personally guarantee payment for future goods shipped to his corporations.

■ As to that part of defendant Foley's alleged promise subject to the statute of frauds, plaintiff claims that, under the doctrine of promissory estoppel, defendant Foley may be held liable on his oral promise to pay the past debts of his corporations notwithstanding the statute of frauds. Application of the doctrine of promissory estoppel is based on the particular factual circumstances of a case and, as an equitable remedy, is employed to alleviate an injustice resulting from strict adherence to established legal principles, such as those underlying the statute of frauds. *Hebrew Teachers v. Jewish Welfare*, 62 Mich.App. 54, 60, 233 N.W.2d 184 (1975). Thus, promissory estoppel, if established, can be invoked to defeat the defense of the statute of frauds. *Lovely v. Dierkes*, 132 Mich. App. 485, 489, 347 N.W.2d 752 (1984); *McMath v. Ford Motor Co.*, 77 Mich.App. 721, 725, 259 N.W.2d 140 (1977).

■ The elements of promissory estoppel are (1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, (3) which in fact produced detrimental reliance or forbearance of that nature, (4) in circumstances such that the promise must be enforced if injustice is to be avoided. *Martin v. East Lansing School District*, 193 Mich. App. 166, 178, 483 N.W.2d 656 (1992); *Dumas v. Auto Club Ins. Ass'n*, 168 Mich. App. 619, 638 (1988); *Lovely*, 132 Mich. App. at 489, 347 N.W.2d 752; *McMath*, 77

Mich.App. at 725, 259 N.W.2d 140. To be sufficient to support an estoppel, a promise must be definite and clear. *McMath*, 77 Mich.App. at 726, 259 N.W.2d 140. Where a defense under a statute of frauds is raised, the rule is that one must have acted to his detriment solely in reliance on the oral agreement. *Martin*, 193 Mich.App. at 178, 483 N.W.2d 656; *Pursell v. Wolverine–Pentronix*, 44 Mich.App. 416, 419, 205 N.W.2d 504 (1973); 3 Samuel Williston and Walter H.E. Jaeger, *A Treatise on the Law of Contracts* § 533A.

■ Plaintiff Crest has alleged sufficiently the existence of facts from which a trier of fact could conclude that defendant Foley made a promise to pay the past debts of his corporations, that defendant Foley should have known that such promise would induce definite and substantial action on the part of plaintiff, and that plaintiff did in fact rely to its detriment solely on this promise of defendant Foley. Plaintiff also has alleged facts from which a jury could find that justice requires enforcement of defendant Foley's alleged promise. Among the factors that should be considered in determining whether injustice can be avoided only by enforcement of the promise is the extent to which the action or forbearance was foreseeable by the promisor. Restatement (Second) of Contracts § 139. The facts as plaintiff alleges them paint a picture of defendant Foley as a smooth talking business owner who intentionally convinced plaintiff to rely on his oral promises and representations in order to induce plaintiff to continue shipping goods to defendant Foley's corporations.

■ Where a plaintiff alleges promissory estoppel to circumvent the statute of frauds, a question of fact is raised which must be resolved at trial by the trier of fact. *Conel Dev. v. River Rouge Sav. Bank et al.*, 84 Mich.App. 415, 423, 269 N.W.2d 621 (1978). Thus, the issue of defendant Foley's liability for the debts of his corporations is an issue for the jury and not one that can be decided properly on motion for summary judgment.

The court finds that on all of plaintiff's claims concerning the personal liability of defendant Foley for the debts of his corporations, there exist genuine issues of material fact as to what was said and agreed to between defendant Foley and plaintiff's president Fred Mandato. Also, there exist genuine issues of material fact as to whether the statements of defendant Foley and the ensuing actions of plaintiff allegedly in reliance thereon, meet the elements of the legal claims asserted by plaintiff.

### ORDER

Therefore, it is hereby ORDERED that defendant's motion for summary judgment as to the liability of defendant Foley is DENIED.

SO ORDERED.