# Foster v. Napier.

### Action on Statutory Detinue Bond.

1. *Transcript, and costs thereof.*—The court complains of the confused state of the transcript in this case, and orders that no costs shall be allowed for it.

2. *Plea of tender.*—When a tender is pleaded, accompanied with the payment of the money into court, and the plea is sustained, the defendant is entitled to a verdict, but the money deposited becomes the property of the plaintiff.

3. *Payment of mortgage debt, as defense to action founded on mortgage.* When the mortgagee of personal property brings detinue, or the statutory action for the recovery of specific chattels, and the plea of payment is interposed, the inquiry is limited to the mortgage debt, and other debts or matters of account between the parties are not within the issue. If any part of the mortgage debt remains unpaid, though the mortgagee may owe the mortgagor another debt of equal or greater amount, the plea is not sustained, and the plaintiff is entitled to recover; and if the mortgage debt is fully paid, the defendant is entitled to a verdict, without regard to other debts or demands; consequently, the judgment on such issue is conclusive only as to the mortgage debt.

4. *Attorney's fees, costs, travelling expenses, &c., as damages.*—In an action on a statutory bond given by the plaintiff in detinue (Code, § 2942), attorney's fees, and costs incurred in that suit (if not previously recovered), as well as any damages actually sustained from the seizure and detention of the property, are legitimate subjects of recovery; but loss of time, and hotel bills paid, while engaged in procuring sureties on the replevin bond, or in attendance on the trial, are too remote and variable.

[Foster v. Napier.]

5. *Parol evidence as to consideration of writing.*—A landlord having procured a merchant to make statutory advances to one of his tenants, from whom a crop-lien note was taken by the merchant, and having executed to the merchant a writing in these words, "I hereby agree and obligate [myself] to bear half the loss, provided the crop does not pay said F. [merchant] five hundred dollars, for furnishing J. and his hands during the year 1879;" parol evidence is admissible, to show that the consideration of the writing was the agreement and promise of F. to furnish supplies to said J. to the amount of five hundred dollars.

6. *Statute of frauds, as to promise to answer for debt or default of another.*—Such writing is itself void under the statute of frauds (Code, § 2121), being a promise to answer for the debt or default of another, and not expressing on its face the consideration on which it was founded.

7. *Contract between landlord and merchant furnishing supplies to tenants; respective rights and liens under.*—If a merchant agrees and promises, at the instance of the landlord, to make statutory advances to his tenants to a specified amount; and the landlord, in consideration thereof, agrees to be responsible for the debt, and transfers his rent contracts as collateral security for its payment; the merchant can not enforce this obligation, when it is shown that he failed to furnish supplies to the full amount specified; but, if he complied fully with his undertaking, he would be entitled to payment out of the crops, in preference to the landlord's claim for rents.

APPEAL from the Circuit Court of Bullock.

Tried before the Hon. H. D. CLAYTON.

WATTS & SON, for appellant.

NORMAN & WILSON, *contra.*

STONE, J.—We regret to find the transcript in this case in so confused a state, that we feel it our duty to complain of it. In the make-up of records, order should be observed, and subjects should be set forth separately and distinctly; and a caption, or marginal note, should be employed, to separate and distinguish the several documents or papers made parts of it.

The present suit is founded on a bond, executed by the appellant as plaintiff, in the institution of a statutory action for the recovery of personal property in specie.—Code of 1876, § 2942. That action was commenced by Foster against Napier, January 16th, 1880, and terminated in a verdict and judgment for defendant, September 9th, 1880. The suit was for the recovery of three mules and a wagon; and plaintiff claimed title under two mortgages executed by Napier, one bearing date in April, 1878, and the other January 1st, 1879. Each of these mortgages was given to secure advances made or to be made by Foster to Napier, to enable the latter to make a crop during the respective years. The defense to the action was made on two pleas: the general issue, and a special plea, averring payment of the debt secured by the mortgages, except one hun-

[Foster v. Napier.]

dred and seventy-five dollars, which the plea averred had been tendered to plaintiff before action brought. With this plea, the defendant brought the money into court. The issues being thus formed, if the defendant proved the truth of his second plea, he was entitled to a verdict, but the money tendered would become the property of the plaintiff.—1 Brick. Dig. 574, §§ 45, 46; *Slaughter v. Swift*, 67 Ala. 494. In such case, the issue is confined to the question of the debt, or its payment, for which the mortgage was given as security. It matters not if the defendant owes the plaintiff other debts, not secured by the mortgage. If the debt the mortgage was given to secure has been paid, this was a complete answer to the suit on the mortgage title. So, if any part of the mortgage debt remained unpaid, it was no defense to the action, that the mortgagee owes the mortgagor on other account. This would furnish a subject for a cross-action, or, to some suits, a successful plea of set-off. It is not payment; and hence, is not a defense to an action of detinue, based on a mortgage title. The defense set up in that suit, and the verdict and judgment thereon, taking into the account the pleadings and charge of the court on the trial, settled conclusively that Napier did not, at the commencement of that suit, owe Foster exceeding one hundred and seventy-five dollars on the debts secured by the mortgages, and that, before suit brought, he had tendered that sum, and had it in court for Foster. The record does not inform us what became of this money; but, as we have said, it became Foster's. That suit, however, settled no other matter of dealings between them, for the obvious reason, that any other matter of dealings or account between them would have been irrelevant to the issue, and could not have been the subject of proof or finding. It should, perhaps, be stated, that inasmuch as the detinue suit was tried before February 8th, 1881, the act to amend section 2944 of the Code, approved on that day, could exert no influence.in its trial. Sess. Acts, 39.

As we have said, the present action is brought on the detinue bond, executed in suing out the writ in the case mentioned above. The plaintiff, against the objection of defendant, was allowed to prove his loss of time, and hotel bills paid, first, in procuring sureties on his replevin bond, and, second, in attending the trial of the case. In this, the Circuit Court erred. Such damages are too remote and variable.—*Bolling v. Tate*, 65 Ala. 417; *Renfro v. Hughes*, 69 Ala. 581. Attorney's fees, and costs incurred in the former suit (if the latter have not been previously recovered), as well as any damage actually sustained by the seizure and detention of the chattels, are legitimate subjects of recovery.

The main defense relied on in this case was set-off. The plea

setting up this defense rested on three grounds: First, that Napier owed Foster a balance on account for advances secured by the mortgages from the former to the latter, mentioned above. As to this claim, the verdict and judgment in the detinue suit was and is a complete answer, to the extent that said claim is made up of advances made before that suit was brought. As to these, the former judgment was a former recovery. Second, the claim set up by Foster, growing out of advances made to Sidney Jones and hands. The facts connected with this question are as follows: As we have said above, on the 1st January, 1879, Napier executed to Foster a mortgage to secure advances for the year 1879. The mortgage was made to secure a note for six hundred and seventy-five dollars, which purported on its face to be a crop-lien note for advances. It contained a clause waiving exemptions. The mortgage also provided for, and secured future advances. The mortgage conveyed to Foster, as security for such indebtedness, the entire crop raised by Napier in 1879 and 1880, including all rents and incomes, with rents due by P. Youngblood, three mules (two bay mare mules and one bay horse mule), one steam-engine, gin and screw, entire stock of cattle and hogs, and one wagon. The three mules and wagon were the subject of the action of detinue. On the 1st day of February, 1879, Sidney Jones and hands executed a note to Napier of five hundred dollars, for land rent for that year. On the 31st day of January, 1879, Sidney Jones and hands executed to Foster a crop-lien note for advances in the sum of five hundred dollars, with waiver of exemptions. On the same day, to secure said note, and also to secure any future advances to be made to them, they conveyed to Foster their crop to be grown, one mule, cattle and hogs, and farming tools; this, by mortgage. Napier executed a paper, without date, of which the following is copy: "I hereby agree and obligate to bear half the loss, provided the crop does not pay S. J. Foster five hundred dollars, for furnishing Sidney Jones and his hands for the year 1879;" signed, "*G. C. Napier*." These are the paper contracts. There is no proof that Foster obtained from Jones and hands, or for their debt to him for advances, any part of the crop grown by them in 1879. On the contrary, the proof is that their crop for that year was received, used and converted by Napier, on his claim for rents, and possibly for advances, as after shown.

The record abounds in conflicting testimony. Foster testified, that the note and mortgage executed by Jones and hands to him, the rent note to Napier, and Napier's conditional obligation to bear half the loss, copied above, though differing somewhat in dates, were all executed at one and the same time, constituted one transaction, and were part and parcel of an

[Foster v. Napier.]

application by Napier to have Foster make advances to Jones and hands, to enable them to make a crop that year; and that he, Foster, agreed to make the advances in consideration and in consequence of the writings thus executed. And he, Foster, testified that, as part of the agreement, Napier delivered to him, as collateral security for the performance of the contract by Jones and hands, the rent note executed by the latter to him, Napier. Napier, while he did not deny his agency in obtaining the agreement of Foster to advance to Jones and hands, testified that the papers were not executed at once, but that his obligation to bear half the loss was executed some time afterwards. He also testified, that he did not deliver to Foster the Jones rent note as collateral to his obligation to bear half the loss, but as collateral for the advances made by Foster to him, Napier. Another irreconcilable conflict in the testimony is the following: Napier testified that, as consideration on which he entered into the obligation to sustain half the loss Foster might suffer from advances made and to be made to Jones and hands, he, Foster, agreed to furnish to Jones and hands five hundred dollars, in such commodities as the statute declares may be the consideration of a crop lien; and that he stopped short of furnishing the five hundred dollars of such articles, before the sum was reached, and before the crop was made.—See Code of 1876, § 3286. He testified, that he, Napier, had been forced, on account of Foster's failure, to furnish the needed supplies. Foster swore that he had not agreed to furnish any particular amount, but that he had said he would not go beyond five hundred dollars in value. There were many other discrepancies.

It was objected for defendant, Foster, that the testimony of Napier, that Foster agreed to furnish supplies to the extent of five hundred dollars, varied the terms of the written contract, and was therefore illegal. We do not so understand it. The writings do not purport to set out the consideration on which Napier's obligation was based. They do not purport to set out the whole contract. The testimony tended to prove the consideration on which the written promise was given; or, if you please, an independent stipulation, not attempted to be reduced to writing, and in no way varying, or contradicting the terms of the writing.—1 Brick. Dig. 859, §§ 787 et seq.; 1 Greenl. Ev. §§ 284 a, 304; 2 Whart. Ev. §§ 927, 1015.

The above is an exception to the rule, where the writing is, on its face, a valid contract. But the obligation executed by Napier, binding himself to make good half the loss Foster might sustain, is invalid under our statute of frauds. It was, at most, a promise to answer for the debt of another, which, though in writing, does not express any consideration. Such

[Foster v. Napier.]

promises are not binding.—2 Brick. Dig. 30, 31, §§ 222, 230; Code of 1876, § 2121.

There is another phase of this question. It will be remembered that, according to the testimony of Foster, the rent contract signed by Jones and hands, payable to Napier, was placed by the latter in the hands of Foster, as collateral security for the advances he was to make to Jones and hands. Napier denied this, and testified it was placed there pursuant to the terms of his mortgage to Foster, and as security on his individual debt. If Foster's account of this transaction is the true one, and the deposit of the rent contract was as security of the debt from Jones and hands, then it will become necessary for the jury to inquire, whether it was one of the terms of the contract that Foster was to furnish Jones and hands with supplies of the kinds mentioned in section 3286 of the Code, to the extent of five hundred dollars, and whether Foster has kept or violated that stipulation. If it be true that Foster's agreement was to furnish five hundred dollars worth of supplies, and the rent contract was placed in his hands on that condition, and as security for its payment; and if it be further true that Foster failed and refused to furnish that amount of supplies of the classes stipulated, then that failure absolved Napier from all obligation to pay for such advances, or any part of them, or to surrender his rent claim to Foster. It would present the familiar case of a claim by Foster, under an executory contract, the dependent stipulations of which he had first broken. On this hypothesis, Foster could claim nothing of Napier, for cotton received by the latter, and applied to rents and indebtedness to himself for advances. So, if the note was placed with Foster by Napier, as collateral security for advances made, or to be made to him, then Foster can claim nothing in this suit on that account. On the other hand, if Foster's version be the true one, that he was not bound to furnish to Jones and hands any specified amount of advances, and if the note was placed in his hands as collateral security for the debt from Jones and hands, then, to the extent Napier received and converted the rents, he would be liable to Foster for so much money had and received, to the extent of the debt to Foster; to secure the payment of which he deposited the note as collateral. Such agreement, if made, would have the effect of securing to Foster a prior right to have his claim paid out of the rents, before the claim of Napier would attach.

The third ground of set-off grew out of a transaction with one Green Adair. Adair, we infer, was a tenant of Napier. On the 6th day of February, 1878, Adair executed to Foster a crop-lien note for the sum of two hundred and twenty-five dollars, with waiver of exemptions. At the same time, he

[Burke v. The State.]

executed a mortgage to secure its payment, conveying crops to be made in 1878 and 1879, and his stock of cattle and hogs. Indorsed on this mortgage, as the language imports, is this agreement: "I hereby relinquish my entire rents due me, in favor of the above mortgage, until it is paid;" signed " *G. C. Napier.*" There was a later note and mortgage, for a similar amount, conveying the same property, and one mule and tools. There was no waiver or relinquishment by Napier, as to this note and mortgage. The account rendered against Adair, in favor of Foster, was continuous, and amounted to near five hundred dollars. It has credit for nine bales of cotton sold, amounting to three hundred and thirty-eight dollars, leaving unpaid one hundred and fifty-six dollars. It would seem there must have been a surrender of cotton, exceeding in value the amount of the first note and mortgage, and that therefore Foster has no claim on this account. The charge of the court, as to this claim, is free from error.

Plaintiff's charge No. 2 is faulty, in that it assumes as fact Napier's statement, that Foster agreed to furnish supplies to Jones and hands amounting to five hundred dollars. The testimony on this question was in conflict, and should have been left to the jury.

What we have said will furnish a guide for another trial, and we need not comment on the other charges.

Reversed and remanded, at the costs of the appellee; but without any costs to the clerk of the Circuit Court, for the transcript sent up.