SOUTH SPINDLETOP OIL & DEVELOPMENT CO., Inc., et al. v. TONEY.
(No. 1766.)

Court of Civil Appeals of Texas. Beaumont.
April 5, 1929.

Rehearing Denied April 10, 1929.

Howth, Adams & Hart, of Beaumont, for appellant.

J. B. Synnott, of Beaumont, for appellee.

O'QUINN, J. Appellee, R. L. Toney, filed suit in the district court of Jefferson county for himself and as assignee of certain alleged labor claims against the South Spindletop Oil & Development Company, a corporation duly incorporated under the laws of the state of Texas, and against E. B. Sutherlin, alleging that the sum of $665.40 was due him in his own behalf and as assignee of said claims for work and labor done and performed by himself and his assignees for appellants.

Appellants answered by general demurrer, general denial, and specially that the cause of action asserted against appellant E. B. Sutherlin was upon a collateral undertaking, not in writing, and in contravention of the statute of frauds and unenforceable. Appellant E. B. Sutherlin further specially answered that, on the dates and at the times alleged in appellee's petition, the South Spindletop Oil & Development Company was a private corporation duly organized and doing business under and by virtue of its charter granted by the state of Texas, and that the claims of appellee, if any, were made by and for the said corporation, and that he (Sutherlin) was not personally liable for any of said claims or amounts; that at no time did he contract personally, either orally or in writing, with appellee or his assigns for the services claimed to have been rendered, and was not liable therefor. Sutherlin duly verified this answer.

The case was tried before the court without a jury, and after the evidence was concluded appellee dismissed his case against the South Spindletop Oil & Development Company, and sought judgment against appellant Sutherlin alone. The court rendered judgment for appellee against Sutherlin in the sum of $552.40, with interest thereon at the rate of 6 per cent. per annum from date of judgment, and this appeal is from that judgment.

Appellant's first and third propositions are to the effect: (a) That the judgment is without support in the evidence, and hence fundamentally erroneous; and (b) that the judgment against appellant Sutherlin should be reversed because the evidence clearly shows that his promise, if any, was to answer for the debt, default, or miscarriage of South Spindletop Oil & Development Company, a corporation, was not an original promise, but a collateral one, not in writing, and therefore in contravention of the statute of frauds and

unenforceable. We shall consider them together.

The court filed his findings of fact and conclusions of law. Among other things, the court found that appellant Sutherlin's promise to pay was an original and not a collateral undertaking; that the men were working for Sutherlin and not for the oil company; that said employees would not have continued to work but for the promise of Sutherlin that he would pay them; and concluded as a matter of law that appellant Sutherlin's promise to pay was an original and not a collateral undertaking, and rendered judgment against him.

The South Spindletop Oil & Development Company was duly incorporated for the purpose of exploring for oil. It was a small concern, composed mainly of persons of quite limited means. Sutherlin was one of its stockholders and active in its affairs. It sold some stock, got together some machinery and a crew of men, and began boring for oil. After exhausting its available funds, several of the stockholders voluntarily advanced or loaned money to the corporation to continue the search for oil, this in accordance with a meeting of the directors of the corporation, the money so advanced to be repaid either in cash or in stock of the corporation as the person advancing the money might elect. Sutherlin advanced or loaned quite a sum of money to the corporation, $3,500 of which had not been repaid at the time of the institution of this suit. When the well was down some 2,400 feet, the company was again unable to proceed for want of funds. Another meeting of the directors was called, and at this meeting Sutherlin was appointed financial agent of and for the corporation, with authority to handle the funds of the company that might be received. All persons advancing or loaning money were to be repaid, either in cash or stock. Sutherlin was not to receive any compensation for his services as financial agent or manager in the effort to further develop the well. Appellee and those who assigned to him their claims for labor were contracted with and the labor was performed. The last payment of wages was on November 30th, and work on the well ceased December 12th for want of funds. The well was a failure. These facts are without dispute.

The contention of appellee is that he and those whose claims he holds were employed by and were working for appellant Sutherlin, and not working for or looking to the corporation for pay. This is strongly denied by appellant. If appellee is correct, then the judgment should be affirmed; but if appellant is correct, that the holding of the court and the judgment is without support, and that the evidence clearly shows that the promise of appellant was not an original but a collateral undertaking, then the judgment

should be reversed and here rendered for appellant Sutherlin.

This suit was instituted against the corporation and Sutherlin as joint defendants. The several accounts assigned to appellee introduced in evidence were against "South Spindletop Oil & Development Co., Inc., and E. B. Sutherlin." On cross-examination R. L. Toney, appellee, testified:

"I agreed for them to take $2 a day out of my pay for stock in the company. That arrangement was made on November 30th. That arrangement was made during the same night that Mr. Sutherlin told me that *he would see* that we were paid personally. He told me that he would pay the balance outside of the $2 which was taken out as stock in the company. He told me that he would hold $2 a day out of the salaries and that he would pay the balance himself personally."

D. E. Toney, one of appellee's assignors, testified:

"It was my understanding that I was working for Mr. E. B. Sutherlin, and not the South Spindletop Oil & Development Company. The reason that I say I was working for Mr. E. B. Sutherlin, and not the South Spindletop Oil & Development Company, was because we had had a little trouble getting our money from the South Spindletop Oil & Development Company, and I told some of them that I wouldn't work unless Mr. Sutherlin *stood good for it and he said that he would.* Mr. Sutherlin was standing there on the front of the derrick when he told me that; *he told me that he would stand good for our money.* * * * After I had worked 12 days, I went to Port Arthur to see Mr. Sutherlin about my pay, and he told me that he didn't have the money; he wanted to know if I would take my pay in jewelry; he said he did not have the money. Two of the boys agreed to accept his proposition to pay them off in jewelry. Darbous and Fontenot agreed to accept his proposition and take their pay in jewelry. * * * Between September 25 and November 12 of 1927 I was receiving stock for part of my pay. I was letting them take out $2 a day for stock in the company. The stock certificate was the South Spindletop Oil & Development Company's. That was not Mr. Sutherlin's stock that I was receiving. * * * As a matter of fact all of my crew that were working there between September 25, 1927, and November 12, 1927, were taking $2 a day out of their salary for stock in the company."

W. K. Rhodden, another of appellee's assignors, testified:

"I worked out there on that drilling rig. I was out there on the night of November 30, 1927. I was out in the toolhouse when Mr. Sutherlin came around there that night. We boys were paid off on November 30th for the work we had done up to that time. Mr. Sutherlin paid us off. He paid us off with checks

690

signed by himself. He signed his own name to the checks. I heard him make a statement there that night to the boys. He paid us off that night and then he said, 'Well, boys, I will *stand good* for the money up until the 15th of December, but,' he says, 'after that I don't know where your money is coming from; I can't tell you no further, but I will *stand good* for it up until the 15th, and we got laid off on the 12th. * * * I would not have continued to work out there if Mr. Sutherlin hadn't told me that *he would stand good for my wages.* At that time I understood that the company was in a bad shape financially. I also understood that Mr. Sutherlin had taken the company over to finance it, and he told us several times that he had taken it over to finance it, and we need not be scared about getting our money, that *he would see* that we got it."

J. S. Brown, another of appellee's assignors, testified:

"I was one of the boys that worked out on that oil well. I was present in the toolhouse on November 30, 1927, and heard a conversation or statement that Mr. Sutherlin made to the boys there in the toolhouse. We met him at the gate; we had done left the rig, and so we turned around and went back and he paid off and he said that he would pay us off that night, and *stand good* for our money up until the 15th of December, but after that he didn't know what would happen. * * * I would not have continued to work there those 12 days, if Mr. Sutherlin hadn't told me that he would *stand good for it.* If he hadn't told me that he would *stand good for the wages,* I would have quit and hunted some other employment."

Gus Sayon, another of appellee's assignors, among other things, testified:

"I know positively that Mr. Sutherlin did *guarantee my wages.* I told him so myself, that I wouldn't work there unless he did. * * * I don't know whether he was doing that as agent for the company or for himself individually."

The employees whose wages are here involved and others received part of their wages in stock of South Spindletop Oil & Development Company, issued by the corporation direct to them. Appellant Sutherlin lived in Port Arthur, in the vicinity where the well was being drilled, and was engaged in the jewelry business. When drilling operations ceased, appellee and those whose claims he holds called on him for payment of their wages, and he told them that he did not have the money, but that, if they would accept jewelry, he would pay them in that. Two employees accepted and received jewelry for their pay. The others refused, and this suit was filed against him and the corporation as joint obligors.

We think appellant's proposition should be sustained. If we were not to consider appellant's strong denial, and the testimony that he ever agreed to become primarily liable to appellee and his assignors for their wages in working for the corporation, and that he was only acting as the agent of and for the corporation, all of which is strongly corroborated, not to say without dispute, it clearly appears from the above evidence and facts that the promise of appellant, if made, was not an original, but a collateral, undertaking, was a promise to answer for the debt, default or miscarriage of another, and was not in writing, as required by article 3995, R. S. 1925, and hence unenforceable. The judgment should be reversed, and here rendered for appellant; and it is so ordered.

Reversed and rendered.