459 P.2d 326

**Lewis PLOURD, Appellant,**

v.

**Purvis SCROGGS, Appellee.**

**No. 1 CA–CIV 713.**

Court of Appeals of Arizona,
Division 1.
Department A.
Oct. 6, 1969.

John R. Hart, Yuma, and Plourd, Heim, Gudmunds & Chaill, by L. Harold Chaill, El Centro, Cal., for appellant.

Shimmel, Hill & Bishop, by Merton Marks, Phoenix, for appellee.

DONOFRIO, Presiding Judge.

The plaintiff in the trial court brought an action seeking recovery of attorney's fees under an express contract. The jury returned a verdict of $4,500 in favor of the plaintiff and thereafter the trial court entered judgment n. o. v. for the defendant from which plaintiff brings this appeal. The issue we must decide is whether or not the trial court erred in granting the judgment notwithstanding the verdict.

Where judgment n. o. v. has been given, the appellate court on review must consider the evidence in the light most favorable to sustaining the jury verdict. Ramirez v. Chavez, 71 Ariz. 239, 226 P.2d 143 (1951). Bearing this in mind, the following facts may be stated from the record: In January 1963 appellee Purvis Scroggs, living in Phoenix, received word that his brother, LeRoy, was being held in El Centro, California, on a first degree murder charge. Accompanied by his friend and former business associate, Herb Fitch, he went to El Centro where he spoke to his son, Charles Scroggs, who was living there, about finding a good attorney for his brother. Charles recommended the appellant, Lewis Plourd. At the time,

LeRoy was represented by the Public Defender. On January 14, 1963 appellee, accompanied by his son Charles, went to see the appellant about defending LeRoy. Appellant testified that during this meeting appellee spoke of how LeRoy was the black sheep of the family, but as a brother he should prevent him, if possible, from going to the gas chamber; that his son Charles said Plourd was a good lawyer and therefore appellee wanted to hire him. Appellee wanted to know what it would cost and appellant answered that it would be $2,000 plus costs. Appellant testified, "He stated that he would see that I got paid for my services, that he wasn't sure whether he could come up with the $2,000 retainer immediately." Appellee then told appellant that LeRoy had some assets which should be applied to the bill and appellant agreed, but went on to say that he would not take the case until after speaking with LeRoy about his confession. Later, after seeing LeRoy in jail, appellant told appellee he would take the case. Concerning the application of LeRoy's assets to the bill, appellant testified:

"Q Now, when you first met with Roy Scroggs at the jail house on or about January 14, 1963, LeRoy agreed to turn over some assets to you and to use those to pay your fee and to pay you, did he not?

"A Yes, that is correct."

LeRoy's defense was skillfully handled, resulting in a jury acquittal, and the appellant set his fee at $10,000. Several requests were made upon appellee for payment, both before and after trial, but no payments were made and the appellee merely responded, "Don't worry, you'll get paid." In the meantime, LeRoy's assets had been liquidated and applied to the bill and LeRoy made about 22 payments of $50.00 each. In addition, appellant's office ledger bore the name of LeRoy Scroggs.

Finally, the pertinent facts can be concluded by noting the testimony of Judge Hebblethwaite of El Centro. He stated he had talked to appellee in January about why appellee was in El Centro. The Judge testified: "* * * he'd come up to the Valley to obtain an attorney to defend his brother, and he told me who he had * * * he said he was hiring Mr. Plourd as the attorney for his brother."

When appellant brought this suit it was originally against both LeRoy and appellee, alleging three counts: (1) account stated, (2) quantum meruit, and (3) express contract. LeRoy was never served. Count 2 was abandoned prior to trial and defendant's motion for directed verdict was granted as to Count 1 at the close of all the evidence. Directed verdict was denied as to Count 3, express contract, and the issue was submitted to the jury which found there was an express original contract and gave a verdict for plaintiff for $4,500. The trial court then entered judgment n. o. v. for the defendant, stating its reasons as follows:

"The court is of the opinion that the promise of the defendant Purvis Scroggs to pay plaintiff for legal services rendered to LeRoy Scroggs was collateral in nature, particularly since it appears that the plaintiff extended credit to LeRoy Scroggs and relied on LeRoy Scroggs for payment. Therefore, as a matter of law, the promise of the defendant Purvis Scroggs is unenforceable unless it was evidenced by a writing as required by the Statute of Frauds."

Both parties are relying on the Arizona Statute of Frauds which is the same as the California statute. A.R.S. § 44–101, Subsection 2, requires a written memorandum "To charge a person upon a promise to answer for the debt, default or miscarriage of another." In this case there was never any written memorandum evidencing the alleged contract. A promise is said to be within the statute if it is one in which the present or future debt of one party is sought to be charged upon and collected from another (i. e., "collateral"), and is held to not be within the statute (i.

e., "original"), if the debt is created at the instance and for the benefit of the promisor. Yarbro v. Neil B. McGinnis Equipment Co., 101 Ariz. 378, 420 P.2d 163 (1966). However, in the end, the question of whether a promise is collateral or original is one of intent of the parties, and there is no absolute criteria by which intention can be determined; each case is determined by its own facts and circumstances. McClave v. Electric Supply, Inc., 93 Ariz. 135, 379 P.2d 123 (1963). In the instant case the trial court granted judgment n. o. v. on the grounds that credit was extended to LeRoy and he was relied upon for payment, thus making the promise collateral and within the statute as a matter of law. Stated in other terms, the trial court, by granting judgment notwithstanding the verdict, found there was no substantial evidence upon which the jury could find that there was an objective intent by the parties that the appellee's promise was to be original, created at his instance and for his benefit. With this we cannot agree. Although the evidence of LeRoy's contributions to the bill might be strongly in favor of the conclusion that it was the intent of the parties to bind LeRoy within the contract, it is not conclusive and cannot establish a collateral promise as a matter of law. Nor is the language "he would see that I got paid for my services" controlling. In McClave, supra, the court said:

> "Such language as 'I will see that you get your money' is fairly commonplace. It and similar phrases are manifestly equivocal and require other evidence from which the intention of the parties can be determined." 93 Ariz. 135 at page 141, 379 P.2d 123 at page 128.

The fact that the appellee was interested in obtaining a good, experienced attorney for his brother; that he stated he would see to it that the fee was paid; and that he expressed to Judge Hebblethwaite that he came to El Centro to "hire" an attorney for his brother was substantial evidence upon which the jury could find an original contract. Therefore, the case is reversed and remanded to the trial court with instructions to reinstate the jury verdict.

STEVENS and CAMERON, JJ., concur.