**James L. HUDSON et al., Appellants,**

v.

**Hampton ASHLEY, Appellee.**

**No. 12139.**

District of Columbia Court of Appeals.

Argued Jan. 5, 1978.

Decided Jan. 17, 1980.

---

964

Bruce A. Frederickson, Washington, D. C., with whom Willie L. Leftwich and Richard A. Penna, Washington, D. C., were on the brief, for appellants.

Peter Larsen, Washington, D. C., for appellee.

Before GALLAGHER and MACK, Associate Judges, and FAUNTLEROY, Associate Judge, Superior Court of the District of Columbia.*

GALLAGHER, Associate Judge:

This is an appeal from a directed verdict entered upon plaintiff's opening statement. Suit was brought on behalf of a law firm against appellee and his son[1] to collect a fee for legal services rendered the son upon appellee's request and promise to pay. Appellant[2] alleged in his complaint that both parties were liable to him, although he failed to state any legal or factual grounds for the son's liability. A default was entered against the son for failure to appear at the pretrial hearing. Appellant made an opening statement in which he referred to the son's default. Appellee thereupon moved for a directed verdict on the ground that the opening statement showed that appellee's promise was an oral promise to answer for his son's debt and thus was unenforceable under the statute of frauds.[3] The trial court agreed, ruling that appellant's allegation of liability against the son, plus the son's default, established as a matter of law that appellee's promise was "a promise to pay the debt of another." Verdict was directed in appellee's favor after the opening statement because a default had been entered against the son. No evidence was heard. We reverse and remand the case for a trial on the merits.

---

* Sitting by designation pursuant to D.C.Code 1973 § 11–707(a).

1. The son did not appeal.

2. The partner who appeared for the firm at trial has since left the firm and is not a party to this appeal. For sake of simplicity, we shall refer to the partners who appeared at trial as well as on appeal as "appellant."

3. The statute of frauds provides that:

An action may not be brought . . . to charge the defendant upon a special promise to answer for the debt, default, or miscarriage of another person, . . . unless the agreement upon which the action is brought, or a memorandum or note thereof, is in writing . . . . [D.C.Code 1973, § 28–3502.]

## I.

Appellant's complaint and pretrial statement asserted that appellee's son was presented in the Superior Court on felony charges of assault with intent to kill and commission of a crime while armed; and that the night before presentment, while his son was incarcerated on these charges, appellee retained appellant's law firm to represent his son. It was further alleged that appellee stated "he would stand personally responsible for all fees incurred as a result of such services." The law firm assertedly agreed to the arrangement, represented the son at the presentment and preliminary hearing, and negotiated a plea with the United States Attorney's Office of guilty to the lesser included offense of carrying a pistol without a license. As a result of this representation the felony charges were dropped, the plea was accepted by the court, and the son was sentenced to six months' unsupervised probation. Thereafter, the father and son allegedly were repeatedly billed and failed to pay, whereupon this suit was brought. The complaint and pretrial statement claimed that both parties were liable in the amount of $2,079.75 plus interest and costs.

At pretrial conference, the son did not appear and a default was entered. While the dissent states a default judgment in the amount of $2,284 was entered for failure to appear at the pretrial hearing, the entry of such a judgment does not appear in the record. The actuality is that an answer having been filed by the son (Eric Ashley), a default *judgment*, as distinguished from a default, could not have properly been entered against him unless the procedure required by Super.Ct.Civ.R. 55(b)(2) was followed.[4] (See note 10, *infra.*) This procedure was not followed.

At trial, appellant made an opening statement in which he referred summarily to the allegations of the complaint and asserted that the evidence would show that the firm "accepted the representation of the son on behalf of Mr. Hampton Ashley," the father. At the close of the opening statement appellee moved for directed verdict contending the agreement was within the statute of frauds and there was no written agreement as required. A colloquy followed between the court and counsel out of the jury's presence during which appellant proffered to the court that the evidence would probably tend to show that when the contract was entered into no one at the law firm knew the son or would ordinarily agree to represent a young, twenty-two-year-old individual in such a matter without promise of payment from another party. The trial court directed a verdict for appellee. In so doing, the court stated:

> Your opening statement indicates that you did consider that credit was given and that liability attached to [the son] because you sued him and got a judgment against him. Therefore, you see, the reasoning behind that, I assume, is that under those circumstances that makes it a promise to pay the debt of another.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> You say in the first count that, "[the son] owes plaintiffs $2,079.75 for services. Plaintiffs have made repeated demands on [the son]." You say that [appellee] would be personally responsible. Responsible for what? For [his son's] fees.
>
> The court will have to grant the motion.

## II.

 Appellant does not challenge the trial court's inherent power to direct a verdict

---

4. In pertinent part, this Rule provides:

 If the party against whom judgment by default is sought has appeared in the action, he (or, if appearing by representative, his representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary

 to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any applicable statute.

at the close of an opening statement, nor could he in light of *Best v. District of Columbia*, 291 U.S. 411, 54 S.Ct. 487, 78 L.Ed. 882 (1934). *Accord, Cook v. Safeway Stores, Inc.*, D.C.App., 354 A.2d 507, 508 (1976). The conditions under which a directed verdict upon an opening statement will be appropriate, however, are quite limited. The trial court first must interpret the opening statement in light of the pleadings and the oral proffers made to the court. *E. g., Niosi v. Aiello*, D.C.Mun.App., 69 A.2d 57, 59, 61 (1949); *McGovern v. Hitt*, 62 App.D.C. 33, 34, 64 F.2d 156, 157, *cert. denied*, 290 U.S. 637, 54 S.Ct. 54, 78 L.Ed. 554 (1933); *see also Jones v. Baltimore & Ohio Railroad*, 5 Mackey (16 D.C.) 8, 10, 13–14 (1885). Then, after all doubts and uncertainties are resolved in the plaintiff's favor, "it must clearly appear . . . that no cause of action exists." *Best v. District of Columbia, supra*, 291 U.S. at 415–16, 54 S.Ct. at 489. As this court has stated:

> Unless the facts and all inferences which may be drawn from them are clear beyond any doubt, the parties are entitled to develop their evidence by testimony and to have the case submitted to the jury under proper instructions. [*Slater v. Berlin*, D.C.Mun.App., 83 A.2d 228, 229 (1951).]

Viewing appellant's allegations in their proper light, and applying that test to this case, we conclude the trial court failed to resolve all doubts in appellant's favor in ruling on appellee's motion for a directed

verdict. There were factual questions to be resolved.

▪ "The distinction between a promise to answer for the debt or default of another person, which is within the Statute [of Frauds], and an independent obligation of the promisor, which is without the Statute, is admittedly difficult." [5] Conflict of authority exists in relation to it. "A contract is not brought within the Statute of Frauds merely because someone other than the promisor received the benefit of the consideration. 2 Williston on Contracts (Rev.Ed.), Sec. 464." *Kerner v. Eastern Dispensary & Casualty Hospital*, 214 Md. 375, 380, 135 A.2d 303, 305–06 (1957). A simple test to determine whether an undertaking was original or collateral, and hence must be in writing, is to ascertain to whom was the credit given for the services rendered. *Id.* at 382, 135 A.2d at 306–07. This test is usually a mixed question of law and fact; and the facts that are determinative usually make the issue a question for the jury. *Id.*[6] Even where there is a promise to answer for the debt of another, it may be enforceable notwithstanding the Statute of Frauds if the "leading object" of the promisor was to obtain a direct, personal benefit. *Pravel, Wilson & Matthews v. Voss*, 471 F.2d 1186, 1189 (5th Cir. 1973).

The pivotal issue in this case is whether the promise to pay the law firm, if made, was original and independent or merely a collateral promise to answer for the debt of the son. Even if it were found to be collateral, the question would remain whether it

---

**5.** 3 Williston on Contracts § 462, at 394 (3d ed. 1960).

**6.** In *Kerner v. Eastern Dispensary, supra*, the court quoted with approval an old opinion of that court, *Elder v. Warfield*, 7 H. & J. 391, 396–97 (1826):

> The general rule being, that whereever [*sic*] the party undertaken for, is *originally* liable upon the same contract, the promise to answer for *that liability* is a collateral promise, and must be in writing. As if B. gives *credit* to C. for goods sold and delivered to him, on the promise of A. to see him paid, or to pay him for them if C. should not, in that case it is the *immediate debt* of C. for which an action will lie against him, and the prom-

ise of A. is a collateral undertaking to pay that debt, he being only as a security.

> But where the party undertaken for is under no *original* liability, the promise is an original undertaking, and binding upon the party promising, without being in writing. Thus, if B. furnishes goods to C. on the *express promise* of A. to pay for them, as if A. says to him, let C. have goods to such an amount, and I will pay you, and the *credit is given* to A. in that case C. being under no liability, there is nothing to which the promise of A. can be collateral; but A. being the *immediate debtor*, it is his original undertaking, and not a promise to answer for the debt of another. [214 Md. at 381, 135 A.2d at 306 (emphasis in *Kerner*).]

falls within the "leading object" exception, to which we have adverted.

■ The applicable test is whether at the time the promise was made the parties intended that credit would be extended solely to the promisor, or to both the promisor and the party who was to receive the services. *See Kerner v. Eastern Dispensary & Casualty Hospital, supra,* 214 Md. at 382, 135 A.2d at 306–07; *City of Highland Park v. Grant-MacKenzie Co.,* 366 Mich. 430, 444–448, 115 N.W.2d 270, 277–78 (1962). This intention is ascertained from the promissory words used, the situation of the parties, and all surrounding circumstances when the promise was made. *Id.* The determinative questions are essentially ones of fact. *Plourd v. Scroggs,* 10 Ariz.App. 409, 459 P.2d 326, 328 (1969); *Romney Produce Co. v. Edwards,* 9 Ariz.App. 258, 259–260, 451 P.2d 338, 339–40 (1969). Moreover, "in most cases the [determinative] facts . . are sufficiently in doubt to make this mixed issue a question for the jury." 2 Corbin on Contracts § 352, at 228 (1950).

■ Appellant had asserted in his opening statement, pleadings,[7] and oral proffers,[8] facts from which a jury might have inferred an original promise to pay for the legal representation of the son, with credit extended only to the father.[9] *See Pravel, Wilson & Matthews v. Voss, supra; Hogan v. Colley,* 227 Ala. 505, 150 So. 501 (1933); *Plourd v. Scroggs, supra; Kerner v. Eastern Dispensary & Casualty Hospital, supra.* The fact that appellant's firm billed the son

did not preclude a jury finding of an original promise, since billing is only "a circumstance to be considered [by the finder of fact] in determining whether credit was extended exclusively to [the promisor]." *Romney Produce Co. v. Edwards, supra* 9 Ariz.App. at 260, 451 P.2d at 340.

■ The Superior Court rules specifically permit a plaintiff to plead separate claims "regardless of consistency" and to plead a claim "alternately or hypothetically." Super.Ct.Civ.R. 8(e)(2). Furthermore, the rules permit joinder of parties on a liberal basis, and provide that:

> Judgment may be given . . . against one or more defendants *according to their respective liabilities.* [Super.Ct. Civ.R. 20(a) (emphasis supplied).]

The fact that the son was joined thus may be explained by the rational inference that the law firm wished to protect its position by involving all relevant parties in one lawsuit, as is permitted, even encouraged, under the rules. Consequently, joining the son as a defendant did not preclude a jury finding that credit was extended solely to the father. Furthermore, "a defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Construction Co. v. Houston National Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975).[10] Where multiple defendants are involved, the court may enter final judgment as to

---

**7.** It was asserted by appellant in his complaint that appellee promised to "stand personally responsible" for the legal fee. Appellant's pretrial statement requested a stipulation that the son was in jail on felony charges when the promise was made. We also note that in his answer to the complaint, appellee's son denied ever having "hired [appellant's] services [ ] or [having] discussed amount, means or arrangements for payment for such."

**8.** Appellant offered at trial to prove that the son was not present when the promise was made and that the firm ordinarily would not agree to represent a twenty-two-year-old in the son's situation.

**9.** It could be inferred that the father had an interest in seeing his son represented by competent counsel, which factor a jury might con-

sider relevant in determining whether an original obligation was intended. *See Plourd v. Scroggs, supra.*

**10.** The trial court, and the parties below as well as on appeal, erroneously refer to the son's default at the pretrial conference as a default "judgment." The record is clear, however, that no judgment was entered against the son until the final judgment was entered as to all the parties. In fact, a default judgment could not legally have been entered until three days *after* the request for it, since the son had filed an answer in the case and was entitled to a hearing with three days' notice before entry of judgment. Super.Ct.Civ.R. 55(b)(2).

fewer than all of them *only* upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. Super.Ct.Civ.R. 54(b). In the absence of such express determination and direction, the rule specifically provides that

> any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties *shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties* [*Id.* (emphasis supplied).]

There was no such express determination and direction for judgment here. Consequently, entry of default against the son was still subject to modification at the time that the trial court directed the verdict.

■ The proper way for the trial court to proceed in this case would have been to pursue essentially [11] the procedure first set out, and still followed, in *Frow v. De La Vega,* 82 U.S. (15 Wall.) 552, 554, 21 L.Ed. 60 (1872). In *Frow,* a bill made a joint charge against several defendants, and one of them defaulted. The Supreme Court held that the correct procedure was

> simply to enter a default and a formal decree *pro confesso* against him, and proceed with the cause upon the answers of the other defendants. The defaulting defendant has merely lost his standing in court. He will not be entitled to service of notice in the cause, nor to appear in it in any way. He can adduce no evidence; he cannot be heard at the final hearing. But if the suit should be denied against the complainant on the merits, the bill

will be dismissed as to all the defendants alike—the defaulter as well as the others. If it be decided in the complainant's favor, he will then be entitled to a final decree against all. But a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal. [*Id.*]

Although *Frow* involved joint liability, it has been stated that the "general rule developed in the *Frow* case applies when the liability is joint and several and probably can be extended to situations in which several defendants have *closely related* defenses." 10 C. Wright & A. Miller, Federal Practice & Procedure § 2690, at 290 (1973) (citation omitted; emphasis supplied). The courts have in fact applied the *Frow* principle in a variety of multiple liability situations whenever inconsistency of decrees will be thereby avoided. *See, e. g., United States v. Peerless Insurance Co.,* 374 F.2d 942, 944–45 (4th Cir. 1967) (principal/surety liability); *Davis v. National Mortgagee Corp.,* 349 F.2d 175, 178 (2d Cir. 1965) (joint liability); *Baker v. Old National Bank,* 91 F. 449, 450 (1st Cir. 1899) (alternative liability); *Pratt v. South Canon Supply Co.,* 47 Colo. 478, 479, 107 P. 1105, 1106 (1910) (primary/secondary liability);[12] *Reliance Insurance Co. v. Thompson-Hayward Chemical Co.,* 214 Kan. 110, 118, 519 P.2d 730, 736 (1974) (joint and several liability); *Harris v. Carter,* 33 N.C.App. 179, 182, 234 S.E.2d 472, 474 (1977) (joint and several liability); *Rawleigh, Moses & Co. v. Capital City Furniture, Inc.,* 9 N.C.App. 640, 642–645, 177 S.E.2d 332, 333–34 (1970) (principal/guarantor liability).

■ Here, the defenses of appellee and his son were closely related, perhaps mutually exclusive. We believe the *Frow* princi-

---

**11.** We have in mind, of course, the fundamentals discussed in that case and exclude from our consideration the formal procedures related there which are now outmoded.

**12.** In this case it was stated:

> The rule of law seems to be well recognized that where an action upon contract is brought against two defendants, and one of them is in default, whose liability *hinges* upon that of his codefendant whose answer is on file denying the liability, it is improper to render judgment against the defaulting defendant before trial of the issues raised by the answer of the codefendant. The proper course is to await disposition of the trial as to the answering codefendant. [47 Colo. at 479, 107 P. at 1106 (emphasis supplied).]

ple should have been applied. The distinct possibility existed that appellant's own proof would have exonerated the son and required setting aside his default at the end of trial. Thus, the son's default could not have been conclusive of the statute of frauds question, either as a matter of evidence or as an estoppel.[13]

We do not by this opinion determine the merits of appellee's statute of frauds defense. On remand, the proof may show an intention to create an original promise with credit extended solely to the father, or it may show an intention to extend credit to both father and son. In the latter event, the evidence might or might not show an *acceptance* of such offer of credit by the son. Finally, assuming acceptance by the son is shown, the evidence might or might not place the case within the "leading object/primary purpose" exception to the statute of frauds, which we have discussed earlier. We decide only that appellant's opening statement did not preclude presentation of the statute of frauds issue to the jury, since neither the firm's billing the son and joining him as a defendant, nor the fact that default had been entered against the son for failure to appear, was conclusive of this issue. It should have been left for the jury to decide the factual issue under appropriate instructions by the court on the statute of frauds question. 2 Corbin on Contracts § 352, at 228–29 (1950).

### III.

Lastly, appellee urges the trial court should be affirmed on the ground that appellant's opening statement did not: (1) "spell out" the terms of the representation; (2) "indicate that the [a]ppellee had specifically retained the [a]ppellant's law firm to do any specific acts for the son"; or (3) make "reference to any benefit running to the [a]ppellee." These contentions lack merit. An opening statement is not a substitute for evidence. Its purpose is merely to inform the court and jury generally what the evidence is expected to show. As supplemented by the pleadings, the opening statement alleged that appellee had retained the firm to represent his son in a criminal matter, had promised to be personally responsible for the fee, and failed to pay when the firm performed. This was sufficient to state a claim.

As to the lack of reference to any benefit running to appellee, in this jurisdiction and most others a contract is enforceable even though no actual benefit accrues to the party promising, so long as the promisee incurs a legal detriment. *Kidwell & Kidwell, Inc. v. W. T. Galliher & Bro., Inc.*, D.C.App., 282 A.2d 575, 578 (1971); *Clay v. Chesapeake & Potomac Telephone Co.*, 87 U.S.App.D.C. 284, 285, 184 F.2d 995, 996 (1950); *Danenhower v. Hayes*, 35 App.D.C. 65, 68 (1910).[14]

*Reversed with instructions to vacate the judgment and the case is remanded for a new trial.*

FAUNTLEROY, Associate Judge, dissenting:

I must respectfully dissent from the majority opinion. It appears that the trial court was correct in granting appellee's motion for directed verdict after appellant's opening statement and subsequent proffer.[1]

---

**13.** For estoppel to apply against a party to litigation "that party must have asserted, *successfully*, one position in litigation, and then switched his position, after the other party has relied thereon to his detriment." *Atkins v. United States*, D.C.App., 283 A.2d 204, 206 n. 4 (1971) (emphasis in original); *Jamison v. Garrett*, 92 U.S.App.D.C. 232, 205 F.2d 15 (1953).

**14.** Appellant is entitled to only one satisfaction of the legal fee as between appellee and his son. *See* Restatement of Judgments § 95 (1942); *see also Shenk v. Gaudet*, D.C.Mun. App., 83 A.2d 672, 676 (1951).

**1.** Although the majority relies on *Best v. District of Columbia*, 291 U.S. 411, 54 S.Ct. 487, 78 L.Ed. 882 (1934) and *Cook v. Safeway Stores, Inc.*, D.C.App., 354 A.2d 507, 508 (1976) as authority that a trial judge has the power to direct a verdict at the close of an opening statement, *Oscanyan v. Winchester Repeating Arms Co.*, 103 U.S. 261, 263, 26 L.Ed. 539, 541 (1881) should not be overlooked as the leading authority for that principle in the present case.

My disagreement with the majority is threefold:

I. The appellant, by taking a default judgment against appellee's son, was precluded from proceeding against appellee.

II. The "leading object" exception to the Statute of Frauds has no applicability since appellee received no business or pecuniary advantage for his alleged promise.

III. The *"Frow"* [2] rule is inapplicable because appellant requested and took a default judgment against appellee's son.

Before considering these points, a further recital of pertinent parts of the record is warranted. At trial, appellant's opening statement was essentially as follows:

"How this lawsuit started was this. There was a complaint filed in the court. The complainant essentially alleged that Mr. Hampton Ashley, the defendant, and his son, Eric Ashley, were obligated to Hudson, Leftwich, & Davenport. . .

The services that were rendered in this incident were rendered as the result of representation in a criminal matter, [Y]our duty will be to decide by the preponderance of the evidence whether or not Mr. Hampton Ashley is obligated to the firm of Hudson & Leftwich for the fees which are prayed for in the complaint.

The complaint was answered by Mr. Hampton Ashley. Mr. Ashley denied that the money—that he owed the money to Hudson & Leftwich. Mr. Eric Ashley also filed an answer in this case but as His Honor has indicated to you earlier, there has been a judgment entered against Mr. Eric Ashley, so you will not be asked to weigh any evidence with respect to the amount due and owing by Mr. Eric Ashley in this case.

The evidence will show that on June 9, 1974, Mr. Willie Leftwich was initially approached by Mr. Hampton Ashley to represent his son, Eric, in the criminal matter. The evidence will further show that Mr. Leftwich had accepted the representation on behalf of Mr. Hampton Ashley and, at his request, did dispatch someone from his office to go down and enter an appearance in the criminal matter.

The evidence will further show that when the law firm of Hudson & Leftwich attempted to collect the money from Mr. Hampton Ashley, it was not forthcoming. Thus, we have this lawsuit which, as was indicated to you earlier, it will be up to you to decide."

Following this opening statement, appellee moved for a directed verdict and counsel for appellant made the following additional proffer:

"The question as to whose credit was looked to when the contract was entered into, Your Honor, seems to me can clearly be cleared up right now. The evidence would probabl[y] tend to show that when the contract was entered into, none of the principles at the law firm even knew or had ever seen Mr. Eric Ashley; that they were in the company of Mr. Hampton Ashley and would just—and this is a suggestion on my part—would not agree at all to undertake such representation with a young, twenty-two-year-old individual."

On the basis of above opening statement and bench proffer, the trial court granted appellee's motion for a directed verdict.

I

The real problem in appellant's case is that he took a default judgment against

---

The *Oscanyan* case, like the matter at hand, involved a contract dispute and not the many factual variables inherent in *Best*, a wrongful death action, and *Cook*, a personal injury suit. The rule to be extracted from *Oscanyan* is clear: if plaintiff's opening statement shows that he cannot recover, then before granting the motion for directed verdict, the plaintiff should be given an opportunity to further explain or qualify his statement. If after such further explanation, it should appear that plaintiff cannot recover, then the trial court should not hesitate to grant the motion for directed verdict. It was this procedure that was followed by the trial court in the instant case.

2. *Frow v. De La Vega*, 82 U.S. (15 Wall.) 552, 554, 21 L.Ed. 60 (1872).

appellee's son which precluded him from obtaining any relief against appellee. While the majority refers to appellant taking a *default only* against appellee's son, a review of the record below discloses that at a Pre-Trial Conference, April 21, 1976, appellant requested and was granted a judgment in the amount of $2,284.20 against appellee's son, and at the trial of this case on March 30, 1977, appellant referred to this judgment in his opening statement.

The majority does not dispute the above facts but instead treats the *default judgment* as a *default only* because of a claimed technical non-compliance with Rule 55(b)(2). This overlooks the fact that all of the participants in the trial below, appellant, appellee and the judge accepted the fact that appellant had been granted a *default judgment* against appellee's son prior to trial. As the majority recognizes, appellee's son is not a party to this appeal. Furthermore, neither appellant nor appellee claim the trial court erred by entering the default judgment.

It is well settled that an appellate court is precluded from passing on questions determined by the trial court, where no appeal is taken from the decision. *See Murray v. Requardt*, 180 Md. 245, 23 A.2d 697 (1942); *Brooks v. Jensen*, D.C.Mun.App., 73 A.2d 32 (1950). Each case must be decided on its own record. This court should not be concerned with extraneous matters merely for the purpose of supplying defects in this appeal. 5 C.J.S. *Appeal and Error* § 1481 (1955).

By recognizing the validity of the default judgment, which was granted at the request of appellant, the wisdom of the trial court's ruling that the appellant could not establish an original promise against appellee can be clearly understood. To establish an original promise, appellant must show that the debt was created at the instance and for the benefit of the promisor. *See Thomas v. Ehrmantraut*, D.C.Mun.App., 111 A.2d 623 (1965). The rule is if the credit is given to the third person to any extent, so that he is in any degree independently and originally liable, the oral promise is collater-

al and within the Statute of Frauds, (D.C. Code § 28–3502). *Symons v. Burton*, 83 Ind.App. 631, 149 N.E. 460 (App.Ct.Ind. 1925); *Williams v. Auten*, 62 Neb. 832, 87 N.W. 1061 (1901); *Webb v. Hawkins Lumber*, 101 Ala. 630, 14 So. 407 (1893); *Swarens v. Pfnisel*, 324 Mo. 1245, 26 S.W.2d 951 (1930). *See also, Kerner v. Eastern Dispensary & Casualty Hospital*, 214 Md. 375, 135 A.2d 303 (1957).

In *Mueller v. Woodson*, 198 S.W. 1134 (K.C.Ct.App.Mo.1917), an appeal was taken by the appellant father after a trial was completed and a judgment entered against him. The facts were that the father assured a merchant that he (appellant) would "take care of" the cost of any clothing that the merchant supplied his son. When the son failed to pay the bill, the merchant sued the father and the son, and secured a judgment against both of them. In reversing the judgment entered against the father, the appellate court based its decision entirely upon a consideration of the evidence offered by the merchant. The court concluded that the merchant could not have relied upon the credit of the father, since he had not only charged the goods to the son, but also claimed and obtained judgment against him.

In another Missouri case, *Swarens v. Pfnisel, supra*, the appellee sued the injured person and the cousin of the injured person for the value of medical services rendered to the injured person. Judgments were taken against both defendants. Plaintiff alleged that the cousin agreed to pay the medical bill. The Court, in responding to the cousin's appeal stated:

"Ordinarily the question as to whom the credit was given is one for the jury and although plaintiff's books charged [the injured] alone for the service rendered, this might not be controlling as a matter of law, but the fact that plaintiff sued both the [the injured person and the cousin], alleging that he . . . rendered services at the special instance and request of both defendants and prayed judgment against both defendants and obtained judgment against them, the

judgment against [the injured person] having become a final judgment, show beyond any question that some credit was given [the injured person]." *Id.*, 26 S.W.2d at 953.

In *Webb v. Hawkins Lumber Co., supra*, appellee sued appellant and one Vann on an account for lumber sold. Vann defaulted and judgment was entered against him, and at trial judgment was also entered against appellant. The facts were that appellee shipped lumber to Vann according to appellant's directions, after appellant agreed he would guarantee the bill and would pay for the lumber. The court concluded that the judgment against appellant should be reversed. It observed that "plaintiff testified that he looked to both Vann and appellant for payment. [T]his is relieved from all doubt by the fact that he has sued them both, and recovered a judgment against both." *Id.*, 14 So. at 408. The court went on to state the rule of law "that where any credit is extended to the party to whom the consideration moves,—where he is looked to at all for payment, though the other party may be in much greater degree relied on,— that debt is his, and the other party's obligation is that of guarantor, which to be binding must be in writing. 8 Amer. & Eng. Enc. Law, page 674, note 6; *Id.* pp. 678, 679, notes; *Foster v. Napier*, 74 Ala. 393; *Boykin v. Dohlonde*, 37 Ala. 577; *Marx v. Bell*, 48 Ala. 497; *Clark v. Jones*, 87 Ala. 474, 6 So. 362." *Id.*, 14 So. at 408.

*Symons v. Burton, supra*, provides a further application of the general rule and is similar to the instant case. In *Symons*, an action was brought against a promisor and a third party to recover on an account for merchandise furnished to the third party. The complaint alleged that the defendants were "separately and severally" liable to appellee for goods sold and delivered to them at their instance and request. The third party defaulted. The trial court rendered judgment against both defendants. On appeal, an *en banc* court reversed the judgment against the promisor and held that since appellee sued the third party and took judgment against him, the record conclusively showed that the third party was

primarily liable and the promisor's agreement was collateral and within the Statute of Frauds.

Also, the *Symons* case quoted at length *Welch v. Marvin*, 36 Mich. 59 (1877), a case in which Welch promised Marvin that he would pay for the meat that Marvin furnished Cook, a third party. In *Welch*, the lower court refused to instruct the jury that:

"to make Welch legally liable, they must also find that Marvin thereupon absolutely discharged Cook from liability, and looked only to Welch for pay."

In declaring the trial court's refusal to give the instruction error, the court noted:

"Under no theory of this case could Cook and Welch both be responsible to plaintiff, severally at his option. If Cook was liable for the meats furnished after the arrangement with Welch was made, then clearly Welch's liability could not be an original one. It is equally clear that if Welch's promise was an original promise, and the debt his debt, then Cook could not be held liable thereon."

With guidance from the aforementioned cases, it is clear that when appellant obtained the default judgment against appellee's son, every element of doubt as to whom the credit was extended vanished.

Accordingly, the appellant, by taking a default judgment against appellee's son, was precluded from proceeding against appellee.

## II

Next, the majority has misapplied the "leading object rule," citing *Pravel, Wilson & Matthews v. Voss*, 471 F.2d 1186 (5th Cir. 1973) as authority for its application.

The *Pravel* case was an action by a law firm against the president of a corporation to recover the reasonable value of legal services to the corporation in another law suit. Judgment was rendered for the law firm and the corporate president appealed. On appeal the court applying Texas law held that the corporate president's repeated

promises that he would personally pay the legal fees was enforceable notwithstanding the Statute of Frauds where his "leading object" in making the promise was to secure a direct, personal benefit to himself (i. e., to protect his share in the contemplated recovery). Even so, some Texas cases have refused to apply the "leading object" exception when the promisor was a stockholder of the corporation whose debt was guaranteed, when the only benefit to him is the continued prosperity of the corporation which would benefit all stockholders. *South Spindletop Oil and Development Co. v. Toney*, 15 S.W.2d 688 (Tex.Civ.App. Beaumont 1929); *C. F. Cooper Petroleum v. La-Gloria Oil & Gas Co.*, 436 S.W.2d 889 (Tex.1969).

The "leading object" rule may be stated as follows:

> Whenever the main purpose and object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own, involving either a benefit to himself, or damage to the other contracting party, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing the liability. *Emerson v. Slater*, 22 How. 28, 43, 16 L.Ed. 360 (1859).

It is well to note that defendant in the *Emerson* case was a large stockholder in the corporation, and holder of the bonds of the company which had been mortgaged. This "leading object rule" was also followed in the case of *Jefferson-Travis, Inc. v. Giant Eagle Markets, Inc.*, 3 Cir., 393 F.2d 426, citing with approval the following cases: *Eastern Wood Products Co. v. Metz*, 370 Pa. 636, 89 A.2d 327 (1952); *City of Philadelphia v. Rosins Parking Lots*, 358 Pa. 174, 56 A.2d 207 (1948); *Kampman v. Pittsburgh Contracting & Engineering Co.*, 316 Pa. 502, 175 A.2d 396, 99 A.L.R. 76 (1934); *Nugent v. Wolfe*, 111 Pa. 471, 4 A. 15 (1886); *Frumkin v. Mayer*, 139 Pa.Super. 139, 11 A.2d 767 (1940).

All of the cases cited above stand for the principle that the "leading object" excep-

tion to the Statute of Frauds is only applied where the promisor receives some pecuniary or business advantage.

Here the facts are clear that appellee received no pecuniary or business advantage from his alleged promise. Therefore the "leading object" exception has no application as the majority has held.

### III

Lastly, the majority asserts that the trial court should have followed the procedure first set out in the case of *Frow v. De La Vega*, 82 U.S. (15 Wall.) 552, 554, 21 L.Ed. 60 (1872). In *Frow*, the defendants were all *jointly* charged in a civil case with conspiracy to defraud the complainant of certain land, one of the defendants defaulted and upon the entry of a default judgment, this defendant appealed. In the meantime, the lower court proceeded to trial against the remaining joint defendants, at the conclusion of which it found in favor of the defendants and against the complainant. Thus the trial court had, with reference to the land in question, granted a judgment in favor of the complainant as to one defaulting defendant and ruled against the complainant as to the contesting defendants.

The Supreme Court in stating the *Frow* rule said:

> The true mode of proceeding where a bill makes a joint charge against several defendants, and one of them makes default, is simply to enter a default and a formal decree pro confesso against him, and proceed with the cause upon the answers of the other defendants. The defaulting defendant has merely lost his standing in court. He will not be entitled to service of notices in the cause, nor to appeal in it in any way. He can adduce no evidence; he cannot be heard at the final hearing. But if the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike—the defaulter as well as the others. If it be decided in the complainant's favor, he will then be entitled to a final decree against all. But a final decree on the merits against the defaulting defend-

ant alone, pending the continuance of the cause, would be incongruous and illegal. 82 U.S. at 554.

While the above rule is necessary and convenient where defendants are charged with being *jointly* liable, the rule has no applicability to cases where the law is well settled that only one of the defendants could be held ultimately liable.

The majority would apply this rule to the instant case on facts which show that the appellant cannot recover under any circumstances, since he requested and was granted a default judgment against appellee's son. The difference between *Frow* and the instant case is that in *Frow* the taking of a default judgment against a jointly charged defendant did not extinguish the liability of the remaining defendants and so the case could proceed to trial against them.

In the present case, the entry of the default judgment against appellee's son prevents appellant from proceeding to recover against appellee.

Appellant in his opening statement stated to the court and jury that he had obtained a judgment against appellee's son, and the record discloses that at the pre-trial conference of the case, appellant requested and obtained the default judgment. Of course the trial court could have judicially noticed this judgment and granted the directed verdict even if appellee had not requested it.

As the Supreme Court said in the case of *Oscanyan v. W. R. Arms Co.*, 103 U.S. 261, 26 L.Ed. 539,

> In the trial of a cause, the admissions of counsel as to matters to be proved, are constantly received and acted upon. They may dispense with proof of facts for which witnesses would otherwise be called. They may limit the demand made or the set-off claimed. Indeed, any fact bearing upon the issues involved, admitted by counsel, may be the ground of the court's procedure, equally as if established by the clearest proof; and if, in the progress of a trial, either by such admission of proof, a fact is developed which must necessarily put an end to the action, the court may, upon its own motion or

that of counsel, act upon it and close the case. 103 U.S. at 263.

If appellant, for any reason, preferred a judgment against appellee, the wisest procedure would have been for appellant's counsel to have requested the court to note the default of appellee's son, but to withhold its entry until the conclusion of the trial in case his request for judgment against appellee was denied. Upon a denial by the court or jury of his claim against the appellee, then he could have requested the court to enter a judgment against appellee's son. If at trial he had prevailed against appellee, then he would not have been entitled to judgment against appellee's son, and the case would have had to be dismissed against the defaulting son. The appellant for reasons of his own did not proceed in this manner.

For reasons stated above, it appears the trial court was clearly justified in terminating the proceedings by granting appellee's Motion for a Directed Verdict.

I would therefore affirm the Judgment of the court below.